603 So.2d 263 (1992)
Joseph CAREY and Wanda Carey Individually and on Behalf of Stephanie Carey
v.
Henry THOMAS, National Automotive Ins. Co. (a Lloyd's Partnership), Christia Lorio, and State Farm Mutual Automobile Ins. Co.
Christi LORIO
v.
Henry THOMAS, National Automotive Ins. Co. (a Lloyd's Partnership) and State Farm Mutual Automobile Ins. Co.
Nos. 92-CA-204, 92-CA-205.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1992.
*264 Leonard A. Radlauer, New Orleans, for plaintiffs-appellants.
George R. Simno, III, New Orleans, Lisa A. Montgomery, Metairie, for defendants-appellees.
Paul M. Sterbcow, Richard A. Fraser, III, New Orleans, Glenn W. Culp, Metairie, for defendant-appellee.
Before BOWES, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This is an appeal from a $40,000 personal injury damage award, in an automobile accident case, in favor of Wanda Carey and against her uninsured motorist insurer, State Farm Mutual Automobile Insurance Company. Both parties seek review. For the following reasons, we increase the damage award to Mrs. Carey to $50,000, and award an additional $3,000, to Mr. Carey for loss of consortium. In all other respects the judgment is affirmed.
The facts of the accident are not in dispute. Wanda, her husband, Joseph, and their daughter were stopped in their van at an intersection. Immediately behind them was a car driven by Christia Lorio. A third car, driven by Henry Thomas, rear ended the Lorio car which in turn struck the Carey van. Damage to the van was described by the investigating officer as light, and the vehicle was repaired and is still in use by the Careys.
By the time of trial the insurer of Thomas had settled the matter by paying Lorio $10,000, and the Careys $10,000, thus exhausting the policy limits of $10,000, per person and $20,000, per occurrence. The matter was thus tried by a jury only against State Farm, the Careys' UM carrier.
Wanda Carey sought damages for a ruptured cervical disc, and Joseph asserted a loss of consortium claim. Plaintiffs further sought exemplary damages, alleging that Thomas was intoxicated and that this condition was the cause of the accident. They finally sought penalties and attorney fees on the grounds that State Farm had acted arbitrarily and capriciously in failing to tender a settlement offer within sixty days of submission of proof of loss. The jury awarded Wanda Carey $50,000, but rejected the remaining three claims. The trial judge entered judgment in favor of the Careys in the amount of $40,000, which resulted from his offsetting the $10,000 already paid the Careys by the tortfeasor's insurer. This appeal followed.
The facts concerning Mrs. Carey's injuries are these. Upon the impact of the accident, she felt a sharp pain in her neck. She was treated briefly in an emergency room and discharged. Some ten days later (during which time she missed no work), the pain was persisting so she saw Dr. Andrew King, an orthopedic surgeon. On her first visit to this doctor on October 30, 1989, he found muscle spasms in her neck, but no evidence of disc or nerve root injury. He advised her to stay home and rest and prescribed anti-inflammatory medication. During the course of subsequent visits of November 6, and 13, and December 11, her condition improved steadily, and on the last visit the doctor advised her to return on an as needed basis. His diagnosis was a "significant whip-lash" type of injury. His *265 prognosis was that although she might continue to suffer occasional pain, such episodes would become increasingly less frequent and hopefully would disappear.
Mrs. Carey did not seek further treatment for almost one year after the December 11, 1989, visit to Dr. King. Then, on December 6, 1990, she returned to this doctor with complaints of pain in her neck and left arm. After several visits and various testing, Dr. King concluded that there was a herniated cervical disc which was causing some nerve root irritation and consequent pain. It was the doctor's further opinion that this disc was probably injured during the accident and that over the course of the proceeding year it had further deteriorated until it began to press on the nerves. He referred her to Dr. Mitchell Harris, also an orthopedic surgeon, for further treatment.
After three examinations and review of X-ray, EMG and MRI results, Dr. Harris agreed with Dr. King that there was a herniated disc which was pressing on a nerve. Because he had not seen her immediately after the accident, but rather over a year later, he declined to express an opinion as to whether the accident caused the disc problem. He did state, however, that it could have been the cause. His prognosis was that because her symptoms were ongoing, the chances for recovery without surgery were not good. He was of the opinion that Mrs. Carey would probably benefit from surgery, but declined to state whether surgery was in fact "necessary". Dr. James Williams, also an orthopedic surgeon, examined plaintiff for State Farm. While he noted a bulge in the cervical disc in question, he did not characterize this finding as a herniated disc. He further testified that he could find no nerve root impingement. His conclusion was that plaintiff suffered a whip-lash type injury in the accident which had resolved within a few months. He further stated that whatever her present complaints might be, they were not related to the accident.
Mrs. Carey testified that even after her last visit to Dr. King in December, 1989, she continued to experience pain in her neck, but dealt with it by limiting her activities and taking over the counter medication. She noted that she had missed some three weeks of work during her original treatment by Dr. King, but had worked regularly thereafter. She said that her neck pain had been episodic during most of 1990, but its severity had not diminished. Then, in late 1990, she stated that she began to have pain and numbness in her left arm, and because of this new development she returned to Dr. King in December. As to possible surgery, she was fearful of possible bad results, including paralysis and damage to the voice box, and thus had not yet decided to undergo such a procedure. She further said that the pain had severely curtailed her social life and had ended her week-end volunteer work as a clown in various childrens' hospitals. She finally testified that she is claustrophobic, and that being placed in the MRI chamber was an extremely difficult and terrifying experience.
On the basis of this testimony the jury awarded her damages of $50,000. Plaintiff urges that this figure is too low, and State Farm argues that it is too high. We reject both arguments. In reviewing damage awards made by lower courts, our first inquiry is whether, on the facts of the case, the trier of fact abused its "much discretion" in fixing the award, Reck v. Stevens, 373 So.2d 498 (La.1979). In the present case we find no such abuse. There was sufficient evidence before the jury to support a finding that Mrs. Carey suffered a herniated disc in the accident which has caused her substantial pain and limited her social, family and conjugal relations. Moreover, the evidence supports findings that this pain will be continuing and that surgical intervention may be required in the future. There was further evidence to show that although she has continued to work, she does so in pain and returns home too exhausted to partake of family life, and she can no longer participate in her volunteer work as a clown at the children's hospitals, an activity which she enjoyed, and for which she had gone to clown school to learn. Considering all of these factors, *266 we can not say that the award is an abuse of discretion and we therefore affirm that award.
As to the trial judge's reduction of the jury award by $10,000, as an off-set for this amount paid them by the tort-feasor's insurer, we conclude that this was error. It was stipulated that this amount had already been paid to the Careys. The jury instruction on this issue, to which neither party objected, was as follows:
A UM insurer is entitled to a credit for special damages paid to the insured prior to trial and also a re-imbursement or credit for the proceeds of any settlement recovered by the insured arising out of the covered accident.
The jury returned a general damage award of $50,000. The trial judge interpreted this verdict to be the jury's assessment of total damages, without any adjustment for the off-set. The difficulty with this conclusion is that it in effect nullified both the stipulation and the instruction. Had neither been put to the jury, then the reduction would have been made as a matter of law. However, because the jury was given the $10,000 figure and instructed that the UM carrier was entitled to a credit for this amount, we can only assume that it gave this credit in its verdict. We therefore amend the judgment by increasing it to $50,000, as per the jury verdict.
The second issue concerns the jury's failure to award damages to Mr. Carey for loss of consortium.
As shown above, the jury must necessarily have found Mrs. Carey's testimony as to pain and its limitations on her marital and social life credible. Had it not, the award would have had no reasonable factual basis. Mr. Carey corroborated that his wife was unable to do much housework, and that he and his daughter, had assumed most of these chores. He also stated that they rarely went to social functions and sports events since the accident and that their sexual life had changed. On this unrefuted evidence, which the jury must have found credible, it erred as a matter of law in not awarding damages for loss of consortium, Curry v. Allstate Ins. Co., 435 So.2d 1030 (La.App. 4th Cir.1983). Our review of this same evidence shows that the lowest amount the jury could have awarded for this item without abusing its discretion is $3,000, and we therefore award that amount, Coco v. Winston Industries, 341 So.2d 332 (La.1976).
The third issue concerns the jury's decision not to award exemplary damages under La.Civ.Code, art. 2315.4. That statute provides that such damages may be awarded for reckless or wanton disregard for the safety of others by a driver whose intoxication causes damages. Before closing argument, the trial judge told the jurors that there was no question that Thomas was intoxicated at the time of the accident. They were thus called upon to determine reckless or wanton conduct and causation.
Thomas admitted that he had been drinking at a wedding reception that evening, but denied that this caused the accident. He stated that he instead fell asleep at the wheel, having gotten up early that morning and being tired. He further testified that he was not speeding, but may have accelerated when he dozed off before the collision. He finally stated that he struck his head during the accident and was disoriented and unsteady on his feet because of the injury. The investigating officer testified that Thomas smelled of alcohol, slurred his speech and had trouble standing up at the scene. He further noted that Thomas consented to a breath test at the station, but was unable to blow into the machine properly and therefore that no results were obtained. On this conflicting testimony, the jury either found that the intoxication was not the cause of the accident, or if it were, that the actions of Thomas in driving after drinking were not in such reckless and wanton disregard of the safety of others as to warrant imposition of exemplary damages.
Our review of factual determinations by the trier of fact is limited to the issue of whether those findings are manifestly erroneous, and great deference must be given to such findings when based on the credibility of witnesses, Rosell v. ESCO, 549 *267 So.2d 840 (La.1989). Here, the jury apparently found the explanation given by Thomas of the accident persuasive, and we are unable to say that that finding was manifestly wrong. We must therefore affirm that finding.
The final issue is whether it was manifest error for the jury to find that State Farm was not arbitrary and capricious in its handling of the claim, as per La.R.S. 22:658. This statute provides for penalties and attorney fees against an insurer who arbitrarily and capriciously fails to pay a claim timely, after receipt of satisfactory proof of loss. Counsel for plaintiffs candidly admits that there was insufficient evidence presented to the jury to establish this claim. He urges, however, that the trial judge improperly refused to admit such evidence and that his case was thereby prejudiced. This evidence was admitted on proffer, and we are urged to consider it here. These arguments are without merit.
The excluded evidence consists of several letters from the State Farm claims adjuster and responses by counsel, all apparently found in his file. Because these documents were not properly shown to be the business records kept by the defendant and also because the adjuster had not been subpoenaed to testify, the trial judge properly excluded them. Even if these business records were admissable, we find that they do not disclose any arbitrary or capricious actions on the part of State Farm. To the contrary, they show that the insurer made several efforts to have counsel provide them with proper medical documentation for the claim, little of which was forthcoming. We particularly note that State Farm had originally paid almost $500 in medical bills for Mrs. Carey's original treatment by Dr. King, and had received from him his diagnosis of a whiplash injury with no disc or nerve injury and with an optimistic prognosis for recovery. Upon receipt of further medical bills over a year later for this same injury, it had every reasonable right to request further documentation, particularly as to causation. Nothing in counsel's letters indicates that any such information was ever provided, and State Farm's eventual decision to litigate this issue, on the facts before us, can hardly be said to constitute arbitrary conduct, and we so rule.
For the foregoing reasons, the judgment is amended to increase the award to Mrs. Carey to $50,000, and judgment is further rendered in the amount of $3,000 to Mr. Carey. In all other respects, the judgment is affirmed.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.