712 So.2d 1060 (1998)
Louise LEE
v.
Duke ALSOBROOKS and Liberty Lloyds.
No. 98-CA-49.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*1061 Donna S. Cummings, Cummings, Cummings, Dudenhefer & Martin, New Orleans, for Plaintiff/Appellant.
Raymond A. Pelleteri, Jr., Ward, Nelson & Pelleteri, New Orleans, for Defendant/Appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Plaintiff, Louise Lee, brings this appeal of damages awarded in a personal injury suit. Lee argues that the damages are inadequate to compensate her for losses in an automobile accident.
At a jury trial on the merits, Ms. Lee testified that on January 21, 1992 she was driving southbound on the Lake Pontchartrain Causeway when her vehicle was struck in the rear by a car traveling at a high rate of speed, which did not stop after the accident. It was later established that the car was driven by defendant, Duke Alsobrooks. Plaintiff originally filed this lawsuit against the driver of the car, his insurer, Liberty Lloyds, and her own uninsured motorist carrier, State Farm. Since this lawsuit was filed, Liberty Lloyds was declared insolvent and the Louisiana Insurance Guaranty Association was substituted as a party defendant. At trial it was stipulated that State Farm was liable for the amount of damages. Because liability was stipulated at trial, the issue of damages is the only one presented for our review.
At the time of the accident in 1992, plaintiff was a forty-year-old woman who was the owner and proprietor of Interior Gardens, an interior landscaping company on the Northshore. Interior Gardens is a company which provides placement and care of live plants in office buildings. On the day of the accident, Ms. Lee was traveling into downtown New Orleans to deliver 24 pots of Chrysanthemums she had just picked up from a greenhouse in Mandeville.
As a result of the accident, Ms. Lee experienced stiffness in her neck and shoulders for which she sought medical treatment. Muscle relaxants and anti-inflammatory drugs were prescribed. However, because she could not drive while under the influence of the prescribed drugs, she had to work in pain. She consulted Dr. Fred Miller, a chiropractor, who conducted a physical examination and took diagnostic x-rays. Although she responded favorably to the initial treatment, she had a setback a few months later which required traction and additional treatment. That pattern has been repeated several times since the accident. There have been occasions when the severity of the pain prevented Ms. Lee from lifting her arm, and it became necessary for her to hire an additional employee to take over her maintenance duties. *1062 Ms. Lee also consulted a orthopedic doctor and a physical therapist. Despite the various treatments, she remains in pain and is unable to do the physical part of her job.
Dr. Miller testified that the plaintiff first came to his office on February 5, 1992 for treatment of neck and shoulder injuries sustained in the accident. Dr. Miller did a physical examination which revealed a right head tilt, a right drop shoulder and hip, and an imbalance in the spinal structure. She had abnormal Kyphosis to the mid-thoracic spine, and discomfort in the lower back area. Further examination showed muscle spasm for the mid-cervical region extending to the shoulder blade area on the left-hand side and indications of nerve root irritation in the cervical spine area. Specifically, she had problems in the C-5 and C-6 disc area, and the T-2, T-3 area, and with the lumbosacral area in the lower part of the back. Based on the examinations and tests, Dr. Miller diagnosed plaintiff's injuries as moderate cervical and lumbar sprain.
After making his diagnosis, Dr. Miller began treatment to decrease spasm, including electrical stimulation, moist heat, and manipulation of the affected area. Subsequently, intrasegmental traction was used to decrease Kyphosis in the thoracic region. Ultimately mechanical traction to help further open up nerve routes as they exit the cervical spine was necessary. At the time of trial, Dr. Miller acknowledged that conservative treatment has not been completely effective, and Ms. Lee has permanent residual injury which causes intermittent discomfort in the neck, shoulder and arm. On cross-examination, Dr. Miller stated that Ms. Lee has reached maximum chiropractic improvement and should not suffer any permanent impairment as a result of the injury. However, she will experience minor flare-ups which will require treatment.
Dr. Miller also testified in depth with regard to his charges, and stated that an outstanding balance of $2,257.00 remains unpaid. Billing records were introduced to substantiate that claim.
Plaintiff also offered the testimony of Dr. Stewart Phillips, an orthopedic surgeon who treated her after the accident. Dr. Phillips testified that Ms. Lee came to his office on November 19, 1992 with complaints of neck and back pain resulting from the accident. She explained that she had extensive chiropractic treatment and exercises which were ineffective in resolving the injury. Dr. Phillips testified that Ms. Lee was primarily concerned with the neck pain, which was considerably more severe than the back pain. Dr. Phillips examined Ms. Lee and found that she had a loss of motion in the neck muscles, and spasm and loss of sensation in the C-5 dermatoma. Because she had symptoms of a ruptured disc, Dr. Phillips requested an MRI. However, because Ms. Lee was claustrophobic, she resisted having the test until September, 1995. That test confirmed Dr. Phillips' suspicion and showed that Ms. Lee had a ruptured disc at C-5, C-6. Dr. Phillips causally related the injury to the accident.
Dr. Phillips did not find that surgery was indicated. However, he testified that Ms. Lee would need further medical treatment such as physical therapy and chiropractics. Based on her medical history in the six years since the accident, Dr. Phillips estimated that Ms. Lee will have three or four flare-ups a year which will require treatment.
At the close of plaintiff's case, she introduced medical bills incurred as a result of the accident which totaled $7,271.35.
Defendant, State Farm, presented evidence from Dr. Robert Steiner, an expert in the field of orthopedic surgery. Dr. Steiner testified that he first saw Ms. Lee on February 13, 1995. She related the details of the accident and resulting injury, as well as her treatment by Dr. Miller. Dr. Steiner conducted a physical examination which revealed a slightly limited range of motion of her neck, and some paresthesia in the medial nerve. Although Dr. Steiner did find Ms. Lee had symptoms of carpal tunnel syndrome, he did not relate that to the accident. He suggested an MRI, which was subsequently conducted. The results of that test showed a small herniated disc at the C-5, C-6 level. There was no indentation of the cervical cord or narrowing of the spinal canal. There was only minimal right *1063 foraminal narrowing. It is also clear from Dr. Steiner's testimony that Ms. Lee's complaints to him correspond to those made to Dr. Miller.
After a trial on the merits, the jury returned a verdict in favor of the plaintiff, and awarded $37,992.35 in damages. According to the jury interrogatories the award consisted of the following:

Physical pain and suffering, past and future $15,000.00
Mental pain and suffering, past and future 3,500.00
Past medical expenses 7,271.35
Future medical expenses 7,200.00
Loss of income 5,021.00
 __________
Total $37,992.35

Those awards are contained in the written jury interrogatories and in the transcript of the trial. However, the written judgment signed by the trial court, which was apparently intended to correspond to the jury verdict, reflects a clerical error. The judgment awards the following:

Physical pain and suffering, past and future $15,000.00
Mental pain and suffering, past and future 3,500.00
Past medical expenses 7,271.00
Future medical expenses 5,021.00
 __________
Total $37,992.00

It is clear that the written judgment contains an error in calculation. As a reviewing court, we are vested with the authority to correct obvious errors of calculation in judgments of the trial court, which could have been corrected if brought to the attention of the court below. Brumfeild v. Guilmino, 93-0366, (La.App. 1 Cir. 3/11/94), 633 So.2d 903, 912, writ denied, 94-0806 (La.5/6/94), 637 So.2d 1056. Accordingly, we amend the judgment to reflect the award given by the jury.
As previously stated, the only issue for our review is the award of damages. Plaintiff argues they are insufficient to compensate her for her injuries. Specifically, she argues that the awards of $15,000.00 in general damages, and $3,500.00 for past and future mental pain and suffering are inadequate. Our review of such awards is set out in Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), in which the Supreme Court explained that the initial inquiry by this Court is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the vast discretion of the trier of fact. It is only after such a determination of abuse of discretion is made that a resort to prior awards is appropriate.
Using that standard of review, and considering the circumstances of the instant case, we find the jury abused its discretion in the award of damages. We agree with the appellant that the award of $15,000.00 for past and future physical pain and suffering is inadequate to compensate plaintiff for her injuries. After a review of similar cases, we find that an award of $50,000.00 is the lowest award that was reasonably within the discretion afforded to the jury. Accordingly, we raise the award for past and future pain and suffering from $15,000.00 to $50,000.00. See, Este' v. State Farm Ins. Companies, 96-99 (La.App. 3 Cir. 7/10/96), 676 So.2d 850; Carey v. Thomas, 603 So.2d 263 (La.App. 5 Cir.1992).
JUDGMENT AMENDED AND AS AMENDED AFFIRMED.