812 So.2d 91 (2002)
Cynthia WEBB
v.
Flora HORTON, Clarendon National Insurance Company, Raymond Burkart and Allstate Insurance Company.
No. 01-CA-978.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 2002.
*93 John B. Perry, Slidell, LA, Attorney for Plaintiff/Appellant.
Vance W. Ott, Donovan & Lawler, Metairie, LA, Attorney for Defendants/Appellees.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
DALEY, Judge.
Plaintiff Cynthia Webb appeals a jury verdict in her favor against Raymond Burkart and Allstate Insurance Company. Webb alleged injuries in a sequence of collisions on February 22, 1998. First, her vehicle, a 1994 Nissan Pathfinder, was struck in the side by a car owned by Flora Horton, a Mercury Cougar, as Horton backed out of her driveway. Immediately afterwards, Webb was hit on the right rear corner by Burkart, who was driving a 1989 Toyota Tercel. Webb settled her case with Horton and her insurer, but went to trial against Burkart and Allstate.[1] A jury found that Horton was 80% at fault and Burkart was 20% at fault for Webb's injuries. The jury awarded Webb a total of $14,957.00, representing $3,757.00 for past medical expenses, $4,500.00 for future medical expenses, $2,700.00 for past, present, and future pain and suffering, including mental anguish, $4,000.00 for permanent physical disability, and $0 for loss of enjoyment of life and loss of earnings/earning capacity. The trial court entered judgment against Burkart and Allstate for $2,991.40, which represents 20% of the verdict. The court also awarded legal interest, court costs, and expert fees. Webb filed a Motion for Judgment Notwithstanding the Verdict, which the trial court denied.
Webb appeals, arguing seven Assignments of Error: 1) the jury erred in finding in finding Burkart only 20% at fault; 2) the jury erred in awarding only $3,757.00 in past medical expenses; 3) the jury erred in awarding only $4,500.00 in future medical expenses; 4) the jury erred in awarding only $2,700.00 in pain and suffering; 5) the jury erred in awarding *94 only $4,000.00 for permanent physical disability; and 6 & 7) the jury erred in failing to award anything for loss of enjoyment of life and loss of earning capacity.
Burkart and Allstate answered the appeal, arguing that the jury's award for future medical expenses and permanent physical disability were contrary to the law and evidence, and asks that those awards be reversed, and the total judgment against defendants be adjusted accordingly.
We affirm the fault allocation. We find that the jury's damage determination, in that Ms. Webb suffered a permanent physical disability and also received an award for future medical expenses, is inconsistent with the amount awarded for pain and suffering. We amend the award to raise the medical expenses award to $10,704.24. We amend the pain and suffering damage award to the lowest reasonable award for a non-surgical herniated disc.
The testimony and evidence established that Webb was struck by two vehicles. Webb was driving her vehicle down Holmes Boulevard in Gretna at approximately 12:45 a.m. on February 22, 1998, following the Endymion parade. Flora Horton and several of her friends were in Horton's car, backing out of Horton's driveway onto Holmes Boulevard. Horton had no taillights. Webb testified that Horton backed into her almost on top of her, and Webb had almost no time to react, but to steer her car to the right, which was the direction from which Horton was coming. Horton's car hit Webb's, and the impact caused Webb's vehicle to protrude at an angle in the street. Burkart, a New Orleans police recruit also returning home from working the Endymion parade, was driving behind Webb and hit her almost immediately after the first collision with Horton. Burkart testified that he saw the Horton vehicle backing out, but didn't think it would back out on the street. When it did, and he saw that it would strike Webb, Burkart attempted an evasive maneuver to the left, but struck the rear portion of Webb's vehicle that now protruded at an angle into the street, the result of the first collision.

ALLOCATION OF FAULT
Webb argues that the jury's fault allocation is contrary to the testimony of her treating physician, Dr. Jeannette Lopez. Dr. Lopez first saw Webb in September of 2000 and diagnosed Webb with a herniated cervical (neck) disc at C4-5. Dr. Lopez opined that the car accident in February of 1998 was the cause of the herniation and that the first collision with Horton was not responsible for Webb's injuries because Webb saw Horton before she struck her, and had time to "tense" the 32 muscles that protect the neck. Because Webb reported to Dr. Lopez that she did not see the Burkart vehicle before it struck her, and, therefore, didn't "tense" her muscles protectively, Dr. Lopez opined that Webb's injuries were primarily caused by the second collision. The rest of plaintiff's brief on this issue argues evidence that supports the fact of Webb's injury, such as physical symptoms and the MRI evidence.
It is apparent from the verdict that the jury accepted the premise that Webb did sustain an injury in this accident. Defendants do not appeal the jury's finding in this regard, only the extent of that injury, as discussed below. The point at issue is the jury's allocation of fault between the two tortfeasors, Horton, who struck Webb first, and Burkart, who hit Webb immediately after Horton struck Webb. Webb argues that her doctor's testimony showed that Burkart caused 100% of her injuries, but also argues that reasonable minds could not differ from the conclusion that he is at least 50% responsible for her injuries. *95 The jury apparently found that but for Horton backing into Webb, Burkart would not have struck Webb's vehicle. The testimony and evidence showed that the initial impact with Horton's vehicle was strong enough to knock Webb's vehicle at an angle in the street.
Webb testified two impacts occurred virtually simultaneously. She said that she struck her head on the steering wheel, but could not remember whether the first or the second impact caused it. On cross examination, Webb admitted that Burkart was not the only person responsible for this accident. She admitted filing suit against the driver of the Horton vehicle who backed into her. She again described the Horton vehicle as backing out right on top of her. In her deposition she described a split second between when she saw the car and when it backed into her. She turned her wheel to the right, but didn't really know why she did that other than reflexively. In her deposition, she also described that the Horton vehicle had no taillights. The Horton vehicle was on top of her "before she knew it."
Dr. William Martin, a neurologist who examined Webb for the defendant, testified that, assuming the disc injury was caused by the February 22, 1998 car accident, it was not possible to say, with any reasonable medical certainty, that one of the impacts caused it over the other. This testimony was in conflict with Dr. Lopez's testimony on causation.
The assigning of percentages of fault is a factual determination and as such is subject to the manifest error standard of review. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3 Cir. 11/6/96), 682 So.2d 974. Fault may be reallocated by the appellate court only after it has found manifest error, and may be lowered or raised only to the highest or lowest point, which is reasonably within the trial court's discretion. Rauch v. Schiavi, 00-160 (La. App. 5 Cir. 10/19/00), 772 So.2d 749. Juries are free to evaluate all testimony, lay and expert. Considering all of the testimony and evidence in this record, we cannot say that the jury's allocation of fault was manifestly erroneous, and thus, we decline to disturb it.

PAST MEDICAL EXPENSES
Webb argues that the jury erred in awarding only $3,757.00 in past medical expenses, when she submitted past medical expenses over $10,000.00, and was diagnosed with a herniated cervical disc. Defendant Burkart argues that the jury awarded Webb her medical expenses in association with a four-month soft tissue injury, clearly finding that Webb did not prove that her later medical expenses were associated with this accident. Burkart argues that the evidence showed that Webb had a soft tissue injury that was 80% resolved within four months of the accident, and that Webb did not complain of neck pain until two years after the accident. Burkart argues that the jury concluded that the herniated cervical disc was not caused by the accident, and that their award of past medical expenses reflects their conclusion.
The jury award of $4,500 in future medicals and $4,000 for permanent physical disability is inconsistent with the jury's substantial reduction in the medical expenses incurred by Ms. Webb. Mr. Burkart's argument that the jury concluded that Ms. Webb sustained only a four month soft tissue injury is also inconsistent with the jury award of future medicals and permanent disability. Since the jury awards are inconsistent, we are required to evaluate the evidence de novo and determine which finding is more reasonable. Matthews v. Consolidated Companies, Inc., 94-2425 (La.App. 4 Cir. 6/29/95), 657 *96 So.2d 765. We find the jury erred in reimbursing the plaintiff for only a part of her submitted medical expenses. We find that the evidence proved that plaintiff's medical expenses were entirely related to this accident.
Dr. Indu Bhatia, Webb's internist, testified that she first saw Webb in connection with this accident on February 23, 1998, the day following the accident. The doctor's notes from the first appointment show that Webb complained of lower back and shoulder pain, anxiety, and strained muscles in the neck and lower back. Dr. Bhatia said that Webb reported no prior neck complaints. Dr. Bhatia prescribed Valium, muscle relaxants, and pain medication. Webb returned for a follow-up appointment on March 2, 1998, where the notes indicated she complained of low back pain and headaches. Dr. Bhatia ordered an x-ray series of Webb's lower back, but not her neck. The x-rays showed normal disc spaces in the lower back. The prescription for Valium was continued and Webb was sent to physical therapy for her lower back. Webb returned for another follow-up appointment on March 17th. Her pain and range of motion were noted as improving with physical therapy. Webb's sacroiliac joint was tender, and she complained of nightmares and insomnia, so the Valium was discontinued.
Webb returned for another appointment on April 24th. She complained of neck pain, pain over her shoulder, and the same back pain. Dr. Bhatia explained that it was not unusual for patients with soft tissue injuries to have good days and bad days. Dr. Bhatia referred Webb to a neurosurgeon, but the records show that Webb did not see one. On June 11, 1998, Webb returned to Dr. Bhatia and reported that she was better, and the doctor found no spinous tenderness. Dr. Bhatia testified that Webb had indicated she was seeing a chiropractor and attributed her improvement to that treatment. The records show that Webb did not see Dr. Bhatia after that.
Dr. Bhatia agreed that the physical therapy notes showed that Webb had reached 80% of her improvement goals by the time physical therapy ended on April 22, 1998. Dr. Bhatia was not a radiologist, never reviewed the MRI, and had no expert training in determining whether an MRI showed traumatic injury or degenerative changes.
Dr. Jeannette Lopez was accepted as an expert in the fields of neurology and anatomy. She first saw the plaintiff on September 26, 2000. Her second appointment with Webb was on October 31, 2000, when she ordered an MRI, which was performed on November 9, 2000. She testified that Webb was reporting symptoms that switched from her right upper extremities to her left, and she felt that this indicated a neck problem, and ordered an MRI of the neck region accordingly. Dr. Lopez identified the MRI and explained the appearance of the herniated cervical disc at C4-5. The radiologist's report characterized the herniation as induced by trauma. Dr. Lopez testified that she did not see any arthritic changes in the cervical spine. EMG studies she performed found bilateral nerve root irritation at the C8-T1 level, resulting in arm and hand weakness.
Dr. Lopez testified that she had seen the plaintiff five different times, twice for the EMG studies and three clinical visits, and Webb's complaints were consistent. Webb complained of burning types of pain in her arms and pins-and-needles pain also. She reviewed the plaintiff's medical records from Dr. Bhatia, Physical Therapy Services where plaintiff received the PT prescribed by Dr. Bhatia, Dr. Messina (a chiropractor), Dr. Dominick Cravell (a chiropractor), and Dr. Bordelon (a chiropractor), *97 and plaintiff's visit with Dr. Martin, defendant's doctor.
Dr. Lopez testified that the plaintiff told her she was in a three car accident in New Orleans. Dr. Lopez testified that she associated the car accident with the herniated disc because she didn't have anything else in the history that would point to another cause for it. Dr. Lopez had prescribed a portable traction unit that had given the plaintiff some relief, and also prescribed a collar for plaintiff to wear when driving long distances. Dr. Lopez has not recommended neck surgery.
On cross examination, Dr. Lopez reiterated that Webb's condition was not surgical at present, and would likely remain so providing that Webb avoided any future neck trauma. Dr. Lopez agreed that without further injury, Webb might likely need about three appointments with a neurologist per year.
The defendant points to Webb's Answers to Interrogatories propounded in this litigation. In those answers, Webb reports that her pain's duration was four months. Plaintiff's counsel, though, supplemented discovery throughout the pretrial period with medical records of ongoing treatment obtained after the interrogatories were initially answered. We find that the plaintiff proved that her cervical injury was longer than four months' duration. A jury is in error for failure to award the full amount of medical expenses proven by a victim. Andres v. Liberty Mutual Insurance Co., 568 So.2d 651 (La.App. 3 Cir. 1990).

OTHER DAMAGE AWARDS
In reviewing a general damage award on appeal, the function of the appellate court is to review the exercise of discretion by the trial court, not to determine what the appellate court considers an appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
On appeal, the initial inquiry is whether the amount awarded by the trial court is a clear abuse of the much discretion afforded the trial court, given the particular injuries and their effects on the particular injured person. Id. It is only when the award is, in either direction, beyond the amount which a reasonable trier of fact could assess for the effects on the particular plaintiff given the particular circumstances, can the appellate court disturb the award. Id. at 1261.
Plaintiff's friend Ouida Slocum testified that she and Webb grew up together and were very physically active, enjoying fishing, three-wheeling, water skiing and related water sports. She testified that the two liked to compete against each other, and that Webb's activities were not hindered in any way. Slocum never heard Webb complain about any neck pain. After the accident, Slocum said she had to help Webb with many things that she couldn't do, like packing and moving boxes and climbing on the ladder for her. Slocum said that Webb can still do some activities, but they have to pick and choose. They don't go four-wheeling anymore, or tubing or jet skiing. Slocum said that Webb seems down at times because of her limitations, but that she is not a complainer.
Danna Smith, Webb's mother, testified that she lives in Mississippi. She said that since the accident, Webb cannot ride her horse as much as before or do all the things on horseback she used to. She said that Webb complains all the time about the pain in her neck, and never complained of pain before the accident. She said that *98 Webb still works full time and supports herself.
Cynthia Webb, plaintiff, testified that there was approximately $5,500.00 worth of damage to her car. At the time of the accident, she was employed as the vice president of a shipping company, preparing the documentation for ocean-going grain barges. She worked approximately 60 to 80 hours per week, she testified. Prior to the accident, she enjoyed scuba diving around twice per year, and also enjoyed water skiing, tubing, horseback riding, and other forms of outdoor recreation.
Webb testified that she began hurting the day after the accident, which was Sunday. She sought medical treatment on Monday. She said she saw Dr. Bhatia for her lower back, shoulders, and neck, denying any prior problems. She said the pain came right back after she completed physical therapy. Her father is a chiropractor in Washington (state). She talked to him about the accident and he recommended she see Dr. Messina, a friend of his. She saw the doctor for the last time in August of 1998. Webb said that the adjustments helped, but the pain would come back.
In the fall of 1998, Webb quit working for the shipping company and followed her dream to open a health food store, which opened in October of 1998. She worked less hours at the store than at the shipping company and the job was much less stressful. For awhile while working there, she thought she could handle her pain on her own, but she could not. A customer of hers recommended Dr. Gravel, whom she saw for a little over three months in 1998. She returned to Dr. Bordelon after she could not afford Dr. Gravel. She testified that she saw Dr. Bordelon from June to October of 2000.
Webb testified that she had told Dr. Bordelon about her car accident. On the morning she saw him in June of 2000, she was scared because when she woke up, she could not move her head at all. She testified that nothing unusual had happened to produce this.
Webb first visited Dr. Lopez in the fall of 2000, she said, because she could not get any answers from Dr. Bordelon or any of the other doctors she had seen. Through research, she figured out she needed to see a neurologist and found Dr. Lopez on her own. At the time of trial, Webb had seen Dr. Lopez about five times. She had never had an MRI before going to Dr. Lopez, or a nerve conduction study. Webb could not relate the herniated disc in her neck to any other event than the rear end accident. Dr. Lopez told her that she did not need surgery at the present time. To alleviate the pain, she uses hot showers and baths, massage, pain relievers, rest, and a traction machine, which she demonstrated for the court, saying that it helped a lot. She drove with a cervical collar.
At the time of trial, Webb was employed as an outside salesperson. She testified that she earned approximately the same amount as she did with the shipping company. Her territory is south Louisiana and southeast Texas, requiring her to drive a lot. She had good days and bad days with the pain. Some days she tries to handle her customers' business on the phone rather than traveling to the stores. She did not snow ski anymore, didn't ride her horse as much, and never ran him. She admitted that she went scuba diving shortly before trial.
Dr. William Martin testified that he examined Webb at the request of the defense. He saw her on February 12, 2001. Webb related the 1998 accident to him. She reported striking her head on the steering wheel, but did not lose consciousness. Dr. Martin reviewed Webb's treatment *99 history. Webb was treated by Dr. Bhatia from 2/23/98 to 6/11/98. On 2/25/98, she began treatment with Dr. Messina, a chiropractor, remaining under his care until 8/12/98. Webb was treated by Dr. Gravel from 3/1/99 until 6/9/99, and by Dr. Bordelon from 6/14/99 until 10/21/99. On 1/24/00 she saw a Dr. Nicaud for one visit. On 2/26/00 she consulted Dr. Lopez, and has remained under her care. Dr. Lopez prescribed Vioxx for her symptoms, which Webb only takes when the pain is very bad, because it upsets her stomach. She reported taking Ultram for pain relief only at bedtime. Webb stated that she had brief headaches that lasted from one to two minutes and occurred two to three times per week, for which she took no pain medication.
Webb described feeling weakness in her arms, particularly the left one, and intermittent tingling sensations in her left arm radiating from her shoulder to her fingers. She had no numbness or pain in her legs, though she reported some lower back pain on and off.
Dr. Martin's physical examination revealed a full range of motion in the cervical spine. Webb had some slight tenderness in the trapezious and deltoid muscles, but had full range of motion in both shoulders. She had a definite left Adson sign, which is the obliteration of the radial pulse caused by a tight muscle. Dr. Martin had trouble relating the Adson sign to what he characterized as Webb's strain and sprain of the car accident three years before his examination. Dr. Martin reviewed Webb's MRI. He noted the protruding disc at C4-5, as well as mild degenerative changes at C3-4 and C5-6.
Dr. Martin testified that it was impossible to look at the MRI and state definitively that the disc injury was caused by a car accident three years ago. He said that it could have been caused by some trauma, or it could have been part of the normal aging process, as shown by the mild degenerative changes at the disc spaces on either side of the protruding disc. He said that the disc injury could have been caused by vigorous physical activity also. Dr. Martin saw no evidence that the disc had herniated through the capsule, characterizing it as a disc protrusion rather than a herniation. Assuming the disc injury was caused by the February 22, 1998 car accident, Dr. Martin said that was not possible to say, with any reasonable medical certainty, that one of the impacts caused it over the other.
The jury concluded that Ms. Webb had suffered an injury as a result of this accident, and has suffered a permanent physical disability, as evidenced by their award of $4,000 for permanent physical disability. Their other damage award is inconsistent with these conclusions and must be amended. In particular, as noted above, we amend the medical expenses award to include all of Ms. Webb's medicals, raising it to $10,704.24.
We further find that Ms. Webb has proved her entitlement to future medical expenses. The testimony showed that Ms. Webb can expect to need around two-three medical visits per year with Dr. Lopez to manage flare-ups of pain and symptoms. Dr. Lopez testified that surgery is not indicated at present. The jury apparently considered Dr. Lopez's testimony in arriving at their award of $4,500.
In addition, as an appellate court, we must raise the damage award to the lowest reasonable award for a non-surgical herniated disc. We conclude that the lowest general damage award within the jury's discretion was $50,000. See Lee v. Alsobrooks, 98-49 (La.App. 5 Cir. 5/27/98), 712 So.2d 1060. In that case, the plaintiff, a 40 year old woman, sustained cervical injuries in a motor vehicle accident. An MRI confirmed *100 a ruptured disc at C5-6, which her treating orthopedist opined was non-surgical but would require future physical therapy and chiropractic treatment. Based upon her medical history since the accident, her doctor estimated the plaintiff would have three or four flare-ups per year requiring treatment. The defendant's physician confirmed the MRI findings and prognosis. See also Carey v. Thomas, 603 So.2d 263 (La.App. 5 Cir. 1992) ($50,000 awarded for non-surgical cervical disc).
We do not find the jury abused its discretion in failing to award plaintiff damages for loss of enjoyment of life or loss of earning capacity. The record shows that the plaintiff was able to scuba dive shortly before trial and was still able to ride her horse. After the accident, plaintiff was able to realize her dream of opening a health food store. The record further shows that the plaintiff proved no loss of income, earning at least as much in her supplement sales as before the accident. Further, the record showed that plaintiff's job was very demanding timewise, which could have led the jury to conclude that the reason plaintiff curtailed her physical recreation was due to the time demands of her job. In any event, we find no manifest error in this regard.
Accordingly, we affirm the jury's fault allocation. We amend the past medical expenses award to increase the past medical damages to $10,704.24, and increase the past, present, and future pain and suffering award to $50,000.00. In all other aspects, the judgment is affirmed. The damage award totals $ 69,204.24, which is subject to 80% reduction due to the jury's fault allocation. The judgment of the trial court is amended and judgment is entered against Raymond Burkart III and Allstate Insurance Company in the amount of Thirteen Thousand Eight Hundred Forty Dollars and Eighty Four Cents ($13,840.84). In all other respects, the trial court's judgment is affirmed. Appellees are cast with all costs of this appeal.
AFFIRMED IN PART; AMENDED IN PART.
NOTES
[1] The appellant's brief relates that her claim against her own insurer, GEICO, was dismissed.