LMARION F. EDWARDS, Judge.
Defendant/Appellant appeals the action of the trial court in granting the plaintiffs judgment notwithstanding the verdict in this automobile accident case. For the following reasons, we amend the trial court’s judgment and affirm as amended.
FACTS AND PROCEDURAL HISTORY
On August 23, 2002, plaintiff, Robert Rehm (“Rehm”), and defendant, Katherine Morgan (“Morgan”) were involved in an automobile collision in the vicinity of the Esplanade Mall in Jefferson Parish. At the time of the accident, Morgan was in *689 sured by Nationwide General Insurance Company. On October 15, 2002, Rehm filed suit against Morgan and Nationwide General Insurance Company (hereinafter collectively referred to as “defendants”,) alleging injury to his back, legs, and other parts of his body. A jury trial of the matter was held from |sOctober 1 though October 8, 2003, after which the jury found Morgan 100 percent at fault for the accident, and made the following damage awards to Rehm:
Past and future physical pain
And suffering $5,000.00
Past and future mental pain And suffering $ 0
Past medical expenses $ 6450.17
Future medical expenses $ 1500.00
Physical disability $ 0
Loss of enjoyment of life $ 0
Rehm thereafter filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial, both of which were heard on November 19, 2003. The trial court thereafter granted Rehm’s motion for JNOV, raising the jury’s general damages award to $150,000.00.[1]
Defendants timely filed the present appeal.
LAW AND ARGUMENT
Defendants raise two assignments of appeal: 1) The trial court erred in granting plaintiffs Motion for a Judgment Notwithstanding the Verdict, and; 2) The trial court erred in “conditionally granting” plaintiffs alternative motion for a new trial.
La.Code of Civil Procedure art. 1811(F) is the authority for a JNOV. This article provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both. In Smith v. Lee,[2] this court noted:
A judgment notwithstanding the verdict is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive [4at a contrary verdict. The motion should be granted when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences of factual questions should be resolved in favor of the non-moving party. See Anderson v. New Orleans Public Services, Inc., 583 So.2d 829 (La.1991), LSA-C.C.P. art. 1811 and Davis v. Wal-Mart Stores, Inc., 00-445 774 So.2d 84 (La.11/28/00).
In both the Anderson and Davis cases quoted supra, the Louisiana Supreme Court stated:
The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After deter *690 mining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review.[3]
Accordingly, we will first determine whether the trial court erred in granting Rehm’s JNOV.
At trial, the jury was presented with the following evidence and testimony regarding the injuries that Rehm sustained as a result of the accident.
First, Robert Rehm himself testified. Rehm stated that he hit Morgan’s vehicle after she ran a stop sign. Soon after the impact, an ambulance arrived on the scene, but he refused medical treatment at that time although he claims that he had a piercing pain at the bottom right of his ribcage, and a tightness toward his back. Thirty to forty-five minutes after arriving home, however, Rehm went to the emergency room at East Jefferson Hospital, where he was x-rayed and released that same night. Rehm said that he had never had a back injury prior to this accident.
| sRehm was referred by his attorney to Dr. Charles Murphy for treatment. Rhem said he had continued to sustain lower back pain that extended into his entire waistline. Over the course of three or four months he underwent a physical therapy regimen, and claimed that it brought him limited relief. At trial, Rehm stated that he still performed certain exercises and stretches to relieve lower back pain. Rehm also described a persistent pain in the middle of his back as well.
Rehm described how the injury has affected his daily routines. He said that he can no longer participate in sports to the extent that he used to because of the persistent pain. He also said that the pain distracts him in school settings, where he is required to sit in a desk for up to forty-five minutes at a time. Rehm testified that as a result of the accident, he missed one day of work and one hour of school.
Dr. George Murphy, Rehm’s treating physician, also recounted Rehm’s history of treatment. Dr. Murphy said that he first saw Rehm in October of 2002 and, after an examination, ordered an MRI of Rehm’s lower back and neck. Dr. Murphy said that Rehm’s cervical MRI was not abnormal, but that the lumbar MRI showed changes at the last two discs in the back. Dr. Murphy attributed the changes in Rehm’s back to the accident, and further opined that the pain in Rehm’s back emanates from an abnormal disc.
Dr. Murphy referred Rehm to a physical therapist, but after Rehm failed to respond satisfactorily after six weeks, Murphy ordered a MRI of Rehm’s thoracic spine. Dr. Murphy agreed with the reviewing radiologist, Dr. Armington, that the disc on the film appeared to be abnormal. Dr. Murphy stated that he felt Rehm’s pain was consistent with a disc problem as well. Dr. Murphy concluded that Rehm would likely face the problem of pain in his mid and lower back for the rest of his life, but that Rehm was not a likely candidate for surgery as a result.
Dr. William Armington, a diagnostic radiologist, testified on Rehm’s behalf. Dr. Armington was the primary reader of Rehm’s thoracic spine MRI films upon | ^referral by Dr. Murphy. Dr. Armington testified that upon reviewing the film, it was evident to him that there was a herniated nucleus propulsus, or herniated disc, between the fifth and sixth thoracic vertebra. Dr. Armington said that it would have been highly unlikely that a man of Rehm’s age would present with a bulging *691 disc as a result of the aging process, and that the, bulge was likely the result of trauma.
Dr. Edward Brown, an expert in radiology and diagnostic radiology tendered by the defendants, read and interpreted both the cervical and lumbar MRI’s performed on Rehm. While Dr. Brown found Rehm’s cervical MRI to be completely normal, he did find “Minimal central protrusion of disc material” in Rehm’s lumbar MRI. Dr. Brown also indicated at trial that bone spurs or annulus fibrosis could be alternate diagnoses drawn from Rehm’s thoracic MRI.
Finally, the jury was presented with the testimony of defense expert Dr. Henry Eiserloh, an orthopedic spine surgeon, who performed an independent medical examination of Rehm. Dr. Eiserloh described for the jury what he termed to be a number of “nonorganic” findings in regard to Rehm’s complaints of pain, which Dr. Eiserloh accounted for by either malingering or psychogenic pain. Eiserloh stated that, in his opinion, Rehm’s cervical MRI was a normal study. He did not recall seeing any lumbar bulging in Rehm’s MRI. In regard to Rehm’s thoracic MRI, Dr. Eiserloh opined that he did not agree with Dr. Armington’s assessment that a herniation or a disc abnormality existed.
On cross examination, however, it was shown that Dr. Eiserloh had written in a report to defense counsel that Rehm’s thoracic MRI revealed a questionable T5-6 disc injury, and that there was “an apparent area of posterior abnormality” at the level of T-6. Further, although Dr. Eiser-loh questioned Dr. Armington’s skill at reading MRI’s, on cross examination Dr. Eiserloh admitted that he occasionally consults Dr. Armington for MRI readings for his own patients.
|7In its reasons for judgment for granting Rehm’s JNOV, the trial court, after summarizing the trial testimony, stated:
This accident occurred on August 23, 2002. Robert Rehm has been treated since the date of the accident; continues to be treated; and still suffers from a herniated disc in his thoracic spine and a bulging disc in his lumbar spine, daily. This affects his ability to lead and live the normal life he was living just prior to the accident. The testimony adduced at trial from Robert Rehm’s treating physician, Dr. George Murphy, established that Robert will more likely than not suffer with these symptoms for the remainder of his life. The life expectancy tables reflect this to be a period in excess of 60 years as reflected in the instructions to the jury ...
They [the jury] obviously believed the testimony of Dr. Murphy and Dr. Arm-ington concerning his [Rehm’s] injuries and condition and that his injuries were caused by the accident. Had they believed Dr. Eiserloh, who testified that there was no basis for his complaints, which testimony the Court found to be incredible, they would not have found it necessary to award past medical expenses and future medical expenses. What the jury did, however, was to render a woefully inadequate award for the pain and suffering testified to by Robert and substantiated by Dr. Murphy who testified on his behalf.
This court is of the opinion that a bulging disc in the lumbar area of the spine, as suffered by the plaintiff in this case, is worth an award of $50,000.00 in general damages, and that the minimum amount that that should be awarded for a herniated disc, regardless of the area of the spine, is worth a minimum of $100,000.00.
*692 Based on the foregoing, it is clear that the jury exceeded their discretion and that their award for general damages is inconsistent with the evidence and their award for future medical expenses. For these reasons, the award should be modified to $150,000.00.
It appears, then that the trial court’s primary reason for granting the JNOV was for what it perceived to be internal incon-sistence in the jury’s award.
The issue of inconsistent damage awards was recently addressed by the Louisiana Supreme Court. The import of the supreme court’s findings was summarized by the First Circuit in the case of Sallinger v. Robichaux.[4]
In Wainwright[5], the Louisiana Supreme Court underscored that a reviewing court’s consideration of special damages, in the absence of general damages, should ascertain whether the jury’s failure to concomitantly award general damages “is so inconsistent as to constitute an abuse of discretion.” Although the high court noted that, as a general proposition, a jury verdict awarding specific but not general damages tends to be illogical or inconsistent under the abuse of discretion standard, the particular facts of each case are | Rdeterminative. Wainwright, 774 So.2d at 76. Circumstances exist in which a jury can reasonably conclude that a plaintiff has proven entitlement to recovery of certain special damages, yet failed to prove the existence of general damages, such as pain and suffering. Id.
In the present case, however, as the trial court points out, the jury did apparently conclude that Rehm was sufficiently injured to warrant an award of past and future medical expenses. In light of that finding, we find no error in the trial court’s conclusion that the jury exceeded their discretion in their award for general damages. Finding that the trial court was not in error in granting Rehm’s JNOV, we next review the trial court’s award of general damages.
The standard for appellate review of general damage awards is whether the trial court abused its great discretion in fixing the award. In Youn v. Maritime Overseas Corp.,[6] the Supreme Court upheld the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact, considering the particular injuries and their effects on the particular circumstances of the particular plaintiff.[7] Only when the appellate court determines that the trier of fact abused its much discretion, may the award be set aside as either too high or too low.[8]
In it reasons for judgment, the trial court stated:
This court is of the opinion that a bulging disc in the lumbar area of the spine, as suffered by the plaintiff in this case, is worth an award of $50,000.00 in general damages, and that the minimum amount that should be awarded for a herniated disc, regardless of the area of the spine, is worth a minimum of $100,000.00.
In the case of Webb v. Horton,[9] referred to by the trial court in its reasons for *693 judgment, this court held that an award of $50,000.00 was the lowest general damage award within the jury’s discretion for a non-surgieal herniated disc. After a review of the record in this case and upon finding that the trial court abused it’s | fldiscretion, we accordingly reduce the trial court’s award of general damages for this injury from $150,000.00 to $50,000.00, an amount we deem appropriate under the facts of this case.
In light of our previous finding that the trial court properly granted the plaintiffs JNOV, we will pretermit discussion on defendants’ remaining assignment of error.
For the foregoing reasons, the judgment of the trial court is amended, and affirmed as amended.
AMENDED; AFFIRMED AS AMENDED
CANNELLA, J., concurs with reasons.

. In regard to Rehm's motion for a new trial, the court noted in its reasons for judgment, "The Court is of the opinion that had it not granted a JNOV in this matter, for the reasons, herein expressed it would grant the plaintiff a new trial.”

. 00-1079 (La.App. 5 Cir. 4/11/01), 783 So.2d 642.

. Davis, supra, at 89; Anderson, supra at 832.

. 1998-2160 (La.App. 1 Cir. 6/22/01), 797 So.2d 724.

. 2000-0492 (La. 10/17/2000), 774 So.2d 70.

. 623 So.2d 1257 (La. 1993).

. Id.

. Id.

. 01-978 (La.App. 5 Cir. 2/13/02), 812 So.2d 91.