745 So.2d 716 (1999)
Chad FONTENOT, Plaintiff-Appellee,
v.
OMNI INSURANCE GROUP, et al., Defendant-Appellant.
No. 99-504.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1999.
*718 Gary J. Ortego, Ville Platte, for Chad Fontenot.
Michael P. Corry, Lafayette, for Omni Ins. Group, et al.
William Allen Repaske, New Iberia, for USA Cas. Ins. Co.
Before DOUCET, C.J., AMY and SULLIVAN, Judges.
AMY, Judge.
The two drivers named as defendants in this personal injury suit were involved in an automobile accident. Immediately following this accident, and before one of the automobiles involved was cleared from the road, the plaintiff, an oncoming driver, ran into the disabled vehicle allegedly causing the injuries of which he now complains. Following a bench trial, both of the defendants were found at fault in causing the subsequent accident. One of the defendant drivers appeals contesting the fault apportioned to him as well as the amount of damages awarded. We affirm.

Factual and Procedural Background
This appeal stems from two automobile accidents occurring on October 13, 1997. The first accident occurred between Defendant, Freddie Common, who was northbound on Highway 29, north of Eunice, Louisiana, and Defendant, Norrissa B. Poullard, who was also northbound. The record reflects that Poullard was traveling behind Common. The testimony of both Common and Poullard indicates that this first accident occurred when Common attempted a left turn onto a private driveway at the time Poullard was attempting to pass the Common vehicle. The accident occurred in the southbound lane. Although Common's vehicle left the roadway, Poullard's vehicle came to rest in the southbound lane.
Immediately following this accident, the plaintiff, Chad Fontenot, was southbound on Highway 29. He testified that he did not see Poullard's disabled vehicle in his lane of travel until it was too late to stop. He stated that he tried to swerve to avoid the vehicle, but that he collided with the car. Following the accident, Fontenot's father-in-law drove him to the hospital where he was examined for injuries.
The petition instituting this matter was filed on June 10, 1998. Fontenot named both Common and Poullard, their automobile liability insurers, and his own uninsured/underinsured motorist insurance provider as defendants. He asserted that the accident was caused by the defendant drivers' negligence and that he was entitled to recover for his property damage, medical treatment, and general damages. Both Poullard and Common asserted the accident resulted, not only from the negligence of the other defendant driver, but also from the plaintiff's negligence.
Following a bench trial, the trial court found in favor of the plaintiff and found him to be free from fault in the accident. Common was assigned sixty-five percent of the fault while Poullard was assigned the remaining thirty-five percent. The judge awarded the plaintiff $772.51 for medical treatment and $7,500.00 in general damages.
The instant matter is an appeal taken by Common. He assigns the following as error:
1. The trial court committed legal error in its apportionment of fault for the subject accident between Mr. Common, Ms. Poullard, and the plaintiff, Chad Fontenot;
2. The trial court's award of general damages to the plaintiff was excessive and constituted legal error.

Discussion

Apportionment of Fault
In his first assignment of error, Common maintains that the trial court *719 erred in assessing any of the fault for the accident to him. He contends that Poullard, as the driver of the passing vehicle, had the duty to be alert to the actions of the vehicle ahead while his duty as the lead vehicle was only to determine that the left turn could be completed safely. Common argues that the evidence supports a finding that he saw Poullard's car approaching from the rear, that he turned his signal on while still at a distance from the driveway, and that he felt Poullard was still at a safe distance when he attempted to turn. Furthermore, he contends that Poullard was speeding at the time of the accident and that she attempted to pass despite having seen his brake lights. Thus, Common contends that the assessment of a majority of the fault to him was in error. Alternatively, Common contends that the plaintiff should have been apportioned some of the fault as he was traveling on a straight portion of the highway. Common apparently argues that the plaintiff was negligent in failing to pay proper attention to the roadway conditions ahead of him.
As explained by a panel of this court in Kilpatrick v. Alliance Casualty Reinsurance Co., 95-17 (La.App. 3 Cir. 7/5/95); 663 So.2d 62, writ denied, 95-2018 (La.11/17/95); 664 So.2d 406, both left-turning motorists and overtaking or passing motorists are required to exercise a high degree of care due to the dangerous nature of the maneuvers. Poullard, as the driver of the overtaking or passing vehicle, owed a duty to ascertain before attempting to pass the preceding vehicle that, from all traffic and roadway conditions, the passing maneuver could be safely completed. Id. citing Palmieri v. Frierson, 288 So.2d 620 (La.1974). See also Boudreaux v. Farmer, 604 So.2d 641 (La.App. 1 Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992).
As the driver of a left-turning vehicle, Common's duty of care included "properly signaling an intention to turn left, and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety." Courmier v. Travelers Ins. Co., 486 So.2d 243, 247 (La.App. 3 Cir.), writs denied, 489 So.2d 250, 251 (La. 1986). Furthermore, La.R.S. 32:104 provides, in part, as follows:
A. No person shall turn a vehicle ... to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
In Kilpatrick, 95-17, p. 4-5; 663 So.2d at 66, this statutory duty to signal was explained as follows:
The onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the case sub judice, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. Husser v. Bogalusa Coca Cola Bottling Co., 215 So.2d 921 (La.App. 1 Cir.1968).
In the present matter, the trial judge rendered oral reasons for ruling in the apportioning of fault and stated, as follows:
The Court in order to decide who is at fault in the present accident must decide who caused the accident between the *720 Po[u]llard and the Common vehicle in the accident that occurred immediately prior to this accident. At the outset, the Court finds that Mr. Fontenot, Chad Fontenot, is free of any fault in this accident. It goes without saying that a left turning motorist, making a turn on a two-lane roadway is probably attempting the most dangerous maneuver a driver undertakes on the highway. A left turning motorist is required to look to the rear to ascertain that he can negotiate the maneuver safely and then must look again immediately before he begins making his turn and he must do so immediately before he ascertained that it is safe to do so. He is also required to put on a left turn indicator, I forgot what the requirement is but uh........a good number of feet, before he arrives at the intersection or the private drive. The ....the cases are replete with uh.....left turning motorist[s] into private driveways, they are even more required to ascertain that it is safe to go into a private driveway than onto a roadway and have to signal as I stated, a sufficient distance to warn overtaking motorist[s]. By the same token, overtaking vehicles on a two-way roadway must ascertain that it is safe to complete a passing maneuver. In the case at bar, Mrs. Po[u]llard testified she saw the Common vehicle's brake lights and that he was slowing. To an overtaking motorist, this can mean only that the vehicle is stopping or intends to initiate a turning maneuver and it is then incumbent upon the overtaking motorist to use extreme caution and if the motorist is going to attempt a passing maneuver must sound the horn, blink the headlights at night to announce that such a maneuver is to take place or the other option is to wait and see what the motorist in front of that vehicle intends to do. These were not undertaken by Mrs. Po[u]llard. The Court assesses fault in this matter on the basis of 65% to Mr. Common, 35% to Mrs. Po[u]llard.
Thus, the trial judge concluded that both Poullard and Common breached the duties attendant to their positions on the roadway and apportioned their fault accordingly. "A trier's findings as to percentage of fault are factual and, in absence of clear or manifest error or an abuse of discretion, must be upheld on appeal." Courmier, 486 So.2d at 246. See also Jackson v. Town of Grambling, 29,198 (La.App. 2 Cir. 2/26/97); 690 So.2d 942. Our review of the record reveals no such error in the court's determination that both Poullard and Common breached their individual standard of care and further supports the court's apportionment of fault.
Common asserts in his appellate brief that trial testimony demonstrates that he "exercised due care in his observations and actions as a driver." While his testimony indicates that he observed the vehicle behind him, that he was not speeding, that he activated his turn signal, and felt that it was safe to make the turn due to Poullard's distance behind, other testimony heard at trial supports the trial court's finding that he breached his duty of care. Poullard testified that she observed Common's vehicle ahead of her and that she could see his brake lights as he continued to decrease his speed. She approximated her speed at between fifty-five and sixty miles per hour and stated that she slowed to around fifty miles as she approached Common's vehicle. Poullard testified that, as she was attempting to pass, Common put on his signal light. She stated that, although she applied her brakes upon seeing the light, it was too late to stop.
Additionally, Trooper Michael Ardoin, one of the state troopers who responded to the accident, stated that he estimated Poullard's speed to be approximately fifty-five miles per hour prior to braking. He stated that Poullard's vehicle left thirty foot skidmarks, the entirety of which were in the passing lane. Thus, the trial court was presented with evidence indicating that Common activated his turn signal, but that he did not do so early enough to *721 adequately inform a passing vehicle of his intent to turn. While Poullard may have also been negligent, as found by the trial court, we find no error in the trial court's assessment of sixty-five percent of the fault to Common given the above-described testimony.
Alternatively, Common argues the trial court erred in failing to assess a portion of the fault to the plaintiff. He argues in his brief that the plaintiff admitted at trial that the section of highway where the accidents occurred was a straight portion of road and that an attentive driver should be able to see what is in front of him. Thus, Common maintains, since the plaintiff testified that he did not see Poullard's disabled vehicle in his lane of travel in time to apply his brakes, "a finding of fault on the part of the plaintiff would be appropriate."
Fontenot testified that it was dark at the time of the accident, his headlights were on low beam, and he was driving fifty-five miles per hour. He stated that he saw Poullard's vehicle in his lane of travel approximately three seconds before impact, her car did not have lights on, and it was broadside in the road. Since he did not have an opportunity to apply his brakes, he attempted to steer to the left to avoid the car. Despite this attempt, he collided with the vehicle.
Trooper Richard G. Parker testified as to the accident between Fontenot and Poullard's vehicle. He stated that, at the time he arrived, Poullard's vehicle did not have the emergency flashers on. Trooper Parker estimated Fontenot's speed to be approximately fifty-five miles per hour at the time of the accident and testified that Fontenot appeared to have attempted to evade the accident, but that no skid marks were left.
Fontenot and Parker's testimony indicates that Fontenot was driving within the speed limit and that his vehicle lights were on. Furthermore, the record supports a finding that Fontenot encountered Poullard's disabled vehicle in his lane of travel and that the vehicle did not have lights or emergency flashers signaling its presence in the roadway. Given this factual scenario, we find no clear error in the trial court's finding that Fontenot was not at fault.

Damages
In his next assignment of error, Common contends that the trial court erred in the quantum assessed for damages. Common first points out that the parties stipulated that the plaintiff incurred $772.51 for medical treatment. However, the right to contest the connexity of each payment was reserved. On appeal, Common contends that a $90.00 charge to a dentist should have been denied as the jaw pain of which the plaintiff complained had resolved at the time of the visit and the problems found by the oral surgeon were unrelated to the accident. Next, Common contends that any injury suffered by Fontenot resolved shortly after the accident and, therefore, the award of $7,500.00 for general damages is excessive.
The plaintiff testified that his face and head struck the steering wheel during the accident and that he lost consciousness and woke up with his leg bleeding from a laceration to his knee. He also stated he felt pain in his neck, arm, and shoulder. The plaintiff testified that following the accident, he reported to an area hospital and complained of pain in his head, jaw, right arm and shoulder, lower back, and knee. X-rays were taken and the plaintiff was given medication and told to report to his family doctor for a follow-up visit.
Dr. Charles Fontenot, accepted as an expert in family practice of general medicine, testified that the plaintiff first came to see him on October 15, 1997. Dr. Fontenot took a history from the plaintiff and examined the x-rays taken at the hospital. He opined that the plaintiff sustained a concussion, contusions to the patella, midback strain, and acute cervical strain. Dr. Fontenot testified that he prescribed analgesics for the pain and headaches. The *722 plaintiff returned to Dr. Fontenot on October 21, 1997 and continued to complain of jaw, neck, mid-back, and knee problems. The plaintiff reported he was still having headaches, although they were better, and he was having difficulty chewing. At that time, Dr. Fontenot referred the plaintiff to Dr. James Pierce, a dentist, due to the jaw pain. The appointment was scheduled for November 19, 1997.
Dr. Fontenot stated his final visit with the plaintiff occurred over a year later on January 15, 1999. The plaintiff reported at that time that he had been released by Dr. Pierce and that he continued to have weekly headaches which he was able to relieve by using extra strength Tylenol.[1] The plaintiff also reported that he has episodes of blurred vision, a condition caused by the need for glasses in the opinion of Dr. Fontenot. Most of his other problems had resolved. Dr. Fontenot testified that, due to the concussion, it would not be uncommon for the plaintiff to suffer headaches for a year or more.
With regard to the award of the examination by the dentist, we find no merit in Common's assertion that the treatment should not have been awarded to the plaintiff. Dr. Fontenot testified that he referred the plaintiff to Dr. Pierce due to the jaw pain complained of following the accident. He stated that he believed that it was the striking of the jaw during the accident that caused the concussion. Given this explanation, we find no error in the trial court's award of this examination. We find this to be true even though conditions unrelated to the accident may have been identified during the visit and the pain may have resolved during the period between the time the appointment was made and the date of the examination. Dr. Fontenot's testimony supports the view that the accident prompted the need for the examination.
We next review the award of $7,500.00 in general damages. In reviewing an award for general damages, much discretion is afforded the ruling of trial court. Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96); 670 So.2d 1206. "Only if the reviewing court determines that the trial court has abused its `much discretion' may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion." Id. at. p. 8; 1210 citing Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). See also Helaire v. Andrews, 97-1341 (La.App. 3 Cir. 3/6/98); 709 So.2d 274.
Although most of the plaintiff's accident-related pain resolved within weeks or months of the accident and he did not incur substantial medical bills or treatment, we cannot say that the $7,500.00 was an abuse of the "much discretion" discussed by the supreme court in Andrus. Rather, the award is supported as the plaintiff testified he was knocked unconscious and that he continued to suffer headaches at the time of trial. Dr. Fontenot testified that the plaintiff suffered a concussion and that headaches for a year or more after such an injury are not uncommon. Furthermore, even if we were to conclude that this award was excessive and an abuse of the trial court's discretion, the second prong of the damages review, i.e., referencing other awards for the highest permissible award, might not result in a lower award. See Lachney v. Automotive Cas. Ins. Co., 94-704 (La. App. 3 Cir. 12/7/94); 647 So.2d 645 (general damages of $7,500.00 affirmed for a plaintiff who suffered from cervical/shoulder pain for three months and six months of headaches and incurred $956.14 in medical expenses). Due to these considerations, we find no merit in this assignment.

*723 DECREE
For the foregoing reasons, the decision of the lower court is affirmed. All costs of this appeal are assessed to the appellants, Freddie Common and Omni Insurance Company.
AFFIRMED.
NOTES
[1] In addition to Dr. Fontenot's testimony, the plaintiff testified at trial that he continued to have headaches. This statement contradicts Common's assertion in his brief that all injuries, including the headaches, had resolved within two months of the accident.