783 So.2d 642 (2001)
Robbi SMITH and Keeley Randall
v.
Harry LEE, Sheriff of Jefferson Parish and Michael Yenni, Parish President, Both on Behalf of the Parish of Jefferson, Thomas Wainwright, Jr., and K & K Insurance Group, Inc.
No. 00-CA-1079.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
Rehearing Denied May 15, 2001.
*643 T. Peter Breslin, Jr., Metairie, LA, Counsel for plaintiff-appellee.
Laurence E. Larmann, Kristen M. Baumer, Metairie, LA, Counsel for defendant-appellant.
Court composed of Judges CANNELLA, McMANUS, and GAUDIN, Pro Tempore.
H. CHARLES GAUDIN, J. Pro Tempore.
This is an appeal from an accident which occurred on March 13, 1994 following disbandment of the St. Patrick's Day Parade in Metairie, Louisiana. Robbi Smith and Keeley Randall were riding on a float being pulled by a truck driven by Thomas Wainwright, Jr. and insured by Transamerica Insurance Group. The float struck an overhanging tree branch, injuring Smith and Randall, who sued.
Following a jury trial on August 16-19, 1999, the jury entered a verdict in favor of the plaintiffs, finding Wainwright and his insurer 90 per cent at fault for the accident and the owners of the tree, John and Shirley Kruse and Charles Wirth, III, 10 per cent at fault. The jurors awarded *644 Smith $16,000.00 for past, present and future pain and suffering, $93,000.00 for present and future medical expenses and $44,000.00 for permanent disability. Randall was awarded $1,700.00 for past, present and future pain and suffering, $7,500.00 for present and future medical expenses and $1,500.00 for permanent disability.
Plaintiffs filed a motion for modification of judgment or in the alternative a motion for new trial, alleging that the jury verdict was contrary to the law and evidence in the following particulars: (1) the jury abused its discretion in assessing 10 per cent comparative fault to the owners of the tree, (2) the amount of special damages awarded to plaintiffs was abusively low, and (3) the amount of general damages awarded to plaintiffs was abusively low. The trial judge granted in part and denied in part plaintiffs' motion for modification of judgment and denied plaintiffs' alternative motion for new trial. The trial judge granted judgment notwithstanding the verdict and reapportioned 100 per cent liability to Wainwright and Transamerica Insurance Group. With regard to damages awarded to Smith, the trial judge left intact the jury's award of $93,000.00 for present and future medical expenses but increased the award of past, present and future pain and suffering from $16,000.00 to $200,000.00, and increased the award of permanent disability form $44,000.00 to $100,000.00. Concerning damages awarded to Randall, the trial judge left in place the present and future medical expenses of $7,500.00, but increased the past, present and future pain and suffering from $1,700.00 to $15,000.00 and increased the permanent disability award from $1,500.00 to $5,000.00.
From this judgment, the defendants appealed, contending that the evidence adduced at trial supported the jury's awards to Smith and Randall and that the trial judge erred in increasing these awards. The defendants also argue that the trial judge erred in reapportioning 100 per cent fault to Wainwright.
For the following reasons, the trial judge's decision to grant a judgment notwithstanding the verdict was appropriate and we affirm it. We also affirm, finding no manifest error, the trial judge's reallocation of negligence and the raising of the general damages awards except for the award for past and future pain and suffering to Robbi Smith, which is reduced to $100,000.00.
A judgment notwithstanding the verdict is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences of factual questions should be resolved in favor of the nonmoving party. See Anderson v. New Orleans Public Services, Inc., 583 So.2d 829 (La.1991), LSA-C.C.P. art. 1811 and Davis v. Wal-Mart Stores, Inc., 00-445 774 So.2d 84 (La.11/28/00).
In both the Anderson and Davis cases, the Louisiana Supreme Court stated:
"The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court *645 must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review."
On the afternoon of March 13, 1994, when the St. Patrick's Day parade was over, driver Wainwright followed the floats ahead of him down Focis Street to where it intersects with the I-10 Service Road. Although several of the floats proceeded down Focis Street, Wainwright turned left on the I-10 Service Road. While proceeding down the Service Road, he encountered an oak tree branch that extended over the vehicular lanes of traffic. As Wainwright approached the branch, he slowed down and attempted to negotiate around the tree. While doing so, the branch hit the top of the float decorations, causing the roof of the float to collapse onto Smith and Randall.
Wainwright testified that he saw the tree branch extending out over the road and merely misjudged going over to his left. At no time did he warn any of the people in the back of the float that he was about to hit the tree branch. He saw this tree extending over the road from about 80 feet away and he accidentally hit it because he did not realize how high his truck float was. He realized it posed a danger because he tried to move to his left; however, he did not move far enough to his left. Wainwright testified that there was no problem with the lighting. He could see clearly that the tree was there. He further testified that although he did not measure the height of the float, he did know that it was over 13 feet six inches and that it exceeded height requirements. He said that the reason this accident happened was because he miscalculated how far to the left he had to go to avoid hitting the branch.
As there was no ascertainable negligence on the tree-owners' part, the jury's allocation of 10 per cent fault to John and Shirley Kruse and Charles Wirth, III was clearly erroneous. The trial judge properly found the float driver 100 per cent responsible. Both plaintiffs, Smith and Randall, suffered head injuries. The trial judge in granting the JNOV, substantially increased the awards to both petitioners for pain and suffering and for permanent disability.
Smith was 34 years of age at time of trial, unmarried but engaged. She testified that since the March 13, 1994 accident and continuing to the present, she suffers from periodic and painful migraine headaches, for which she has taken and for which she continues to take various kinds of pain medication.
She described the March 13, 1994 accident thusly:
"... I heard a boom, and then I felt something hit me in the exact place as my first accident where I got hit in the head, and I fell real hard to the floor, you know, on my knees, and bruised up my knees and everything. But I just fell down, and it was dark. I couldn't, you know, it was real dark when I was looking around, and then I heard somebody say whoever can move, if anybody is okay, crawl to the front because they had a little wide opening spot, so I did that".
Smith's "first accident" occurred in 1982. She was in an automobile wreck and sustained a serious brain injury. She was in a coma for two weeks and hospitalized for approximately one month thereafter. Smith said she "almost died" and "was *646 paralyzed on my whole entire left side." She was then a sophomore in high school.
Smith said that on March 13, 1994, she was struck in the head "in the same place" as she had been hit in 1982.
She said that as a result of the 1982 accident she became, at the age of 17, a new-born infant. She said that she had to relearn how to walk, talk, feed herself and grow up all over again.
Nonetheless, Smith recovered well enough to graduate from Riverdale High School, to attend Delgado College, where she made As and Bs and was on the Dean's list, and to enroll in a computer course at LSU in Baton Rouge. She also did volunteer work through the Kawani's Club.
Unable to either concentrate or remember things, and suffering from painful headaches, Smith said, she "started failing" LSU courses after the March 13, 1994 accident and "flunked" out of school.
Smith testified that the headaches after the March 13, 1994 accident were different from those caused by the 1982 accident.
Dr. Howard Katz, the neurologist who treated Smith after both accidents, explained that the headaches caused by the 1982 accident were musculoskeletal, situated in the frontal and temporal regions. The headaches from the March 13, 1994 accident were migraine headaches, Dr. Katz said, "not anything like the headaches she had been having prior to March of 1994."
Dr. Katz also stated that "... if you've had one head injury, the second head injury is worse than he first. Mohammed Ali is a good example of that; someone who has had multiple head injuries from boxing and the more you get hit, the worse the consequences. So a head injury to Robbi now is going to be worse than the one before ..."
When asked if Smith's migraine headaches were being caused by the March 13, 1994 accident, Dr. Katz said: "There's no doubt in my mind."
Dr. Katz stated that Smith "... had some of the worse migraine headaches. She's come into my office crying, weeping because of the headaches ... She comes in now, she is much more deepened in her headaches, begging me to do something."
Smith continues to receive medication and she still sees Dr. Katz every month or every six weeks. "More likely than not," Dr. Katz said, "she will always suffer from migraine headaches." Smith, the doctor said, will continue taking prescription medication for the rest of his life as a result of the March 13, 1994 injury.
Pamela Cameron, a clinical social worker who has seen Smith since April of 1992, testified about Smith's increased headaches following the March 13, 1994 accident.
Dr. Donald Adams, a neurologist called by defendants, examined Smith on September 14, 1998 and concluded that her current headaches were not related to the St. Patrick's Day incident. However, other medical and lay witnesses testified and they linked Smith's present complaints, headaches and temporomandibular joint orthopedic problem, to the March 13, 1994 accident.
Among the medical witnesses was Dr. Walter Sanders, a psychiatrist who first saw Smith on March 30, 1995. He found Smith with a major depressive disorder, saying she was gloomy and that her speech was "raspy." Dr. Sanders testified that while Smith's headaches occurred three or four times a month after the 1982 accident, they were occurring almost daily since the second accident. "Sometimes," *647 Smith told Dr. Sanders, "I wish I were dead."
Several chiropractors and physical therapists verified Smith's headaches and neck and shoulder complaints after the March 13, 1994 accident. Smith moved in with her sister, Jana, when she (Robbi) returned from LSU. Jana testified that she went to see Dr. Katz because of mental lapses Robbi was experiencing. Jana said her sister "doesn't quite grasp things."
The jury awarded Smith $93,000.00 in medical expenses and only $16,000.00 for pain and suffering. Appellees argue that these figures were not inconsistent, considering the testimony; nonetheless, the trial judge was convinced, and so are we, that the $16,000.00 award was unreasonably low and that an increase was mandated. The raise from $16,000.00 to $200,000.00, however, was manifestly wrong. Without merely substituting our evaluation for that of the trial judge, we find that the highest awarded for pain and suffering, supported by evidence and medical testimony would be $100,000.00, which is, incidentally, the minimum amount asked for by Smith's attorney in his Motion for Modification of Judgment. We see no manifest error in the trial judge's increase for permanent disability as it appears clear from the record that the painful migraine headaches she suffers from and the medication she is taking have no foreseeable end.
Keeley Randall was 40 years of age at trial, married since 1995 to Richard Guidroz. She has two children.
Mrs. Guidroz testified that after being hit on the head and knocked to the floor of the float, she was placed in a stretcher and taken to East Jefferson Hospital.
Dr. Timothy Finney, an orthopedist, examined Mrs. Guidroz on March 14, 1994, and felt she had sustained a concussion. Mrs. Guidroz complained of headaches, blurred vision and neck and shoulder pain. Dr. Finney saw Mrs. Guidroz on April 6, 1994 and again on February 1, 1995, both times injecting cortisone to relieve neck and shoulder pain.
Mrs. Guidroz saw other doctors and eventually Dr. Mossadig Jaffri, a neurologist and board certified in internal medicine and neuromuscular disorders. He saw Mrs. Guidroz in October of 1998 for headaches she said she had been experiencing for years. Dr. Jaffri's diagnosis was a post-traumatic migraine syndrome which he related to the St. Patrick's Day accident.
At time of trial, Mrs. Guidroz was receiving Imitrex by injection for recurring headaches. Dr. Jaffri testified that Mrs. Guidry's "chances of keeping on with these symptoms is very, very good."
The trial judge found the jury awards to Mrs. Guidroz of $1,700.00 for pain and suffering and $1,500.00 for permanent disability unreasonably low, which they appear to be; consequently, the granting of the JNOV was appropriate.
In increasing the awards to $15,000.00 for pain and suffering and to $5,000.00 for permanent disability, there is no manifest error.
In summary, we find that the record and the medical and lay testimony support the trial judge's granting of the JNOV and that the increased awards were not manifestly erroneous except for the past and future pain and suffering award to Robbi Smith, which is lessened to $100,000.
Appellees are to bear costs of this appeal.
AFFIRMED IN PART; AMENDED IN PART AND RENDERED.