836 So.2d 1193 (2003)
Cynthia ADAMS, Plaintiff-Appellee,
v.
Alton E. CHENAULT, Jr., Southern Made Trucking, Employees Mutual Casualty Company, Jessie D. Laprarie, and Trinity Universal Insurance Company of Kansas, Inc., Defendant-Appellant.
No. 36,729-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
*1194 Lunn, Irion, Salley, Carlisle & Gardner by James A. Mijalis, Shreveport, for Defendant-Appellant.
John T. Bennett, Candyce Catherine Gagnard, New Orleans, for Plaintiff-Appellee.
Before BROWN, STEWART and HARRISON (Pro Tempore), JJ.
HARRISON, Judge (Pro Tempore).
The defendants, Alton E. Chenault Jr., Southern Made Trucking Inc. and Employers Mutual Casualty Co. (collectively "Employers Mutual"), appeal the quantum of general damages and future medical expenses awarded to the plaintiff, Cynthia Adams, as a result of an automobile accident. For the reasons expressed, we amend and affirm.

Factual background
On June 18, 1999, Ms. Adams was riding in the front passenger seat of her father's 1991 Lincoln Continental on Air Base Road, just north of Alexandria, Louisiana, en route to Air Base Hospital for pre-tests for a hysterectomy. Her father, Jessie LaPrairie, was driving, and her daughter, Jessica, was riding in the back seat. As they passed I-49, an 18-wheeler driven by Alton Chenault Jr. rolled down the exit ramp and "lost its brakes." It struck the passenger side of the Continental, knocking it about 150 feet. Ms. Adams was wearing her seatbelt and did not recall if her head struck anything in the collision. Her daughter, in the back seat, was very agitated but sustained no serious injuries; her father was not injured at all. At the scene, Ms. Adams indicated she was not injured; she called her husband to drive her home to Vick, Louisiana, north of Marksville. However, she testified that immediately after the accident, she got a headache, and by the next morning it was "really terrible."

Medical evidence
The morning after the accident, Ms. Adams went to the emergency room at Avoyelles General Hospital. She testified that she reported the headache and a burning sensation in her neck. However, hospital records reflect only small abrasions over her right shoulder, and pain in her neck and back. The doctor on duty *1195 diagnosed neck strain and gave her Motrin.
One week later, on June 23, Ms. Adams went to Dr. Bryan C. McCann, a family practice physician in Marksville. She has been seeing him regularly ever since for migraine headaches and neck pain. In numerous examinations, Dr. McCann could find no objective evidence of injury. Despite the headaches, Ms. Adams proceeded with the previously planned hysterectomy about one month after the accident; Dr. McCann has given her hormone replacement therapy since then. In December 1999, he ordered an MRI which was negative. He testified that migraines often are the result of stress, but they can also result from "tightness and tenseness" in the neck. He ascribed her headaches to the accident.
Dr. McCann prescribed Vicodin, which contains the synthetic narcotic hydrocodone, 15 or 20 pills every two weeks for nearly 2½ years.[1] He did not think this was enough to cause an addiction. He was unaware that she was getting hydrocodone from any other doctor, and testified that had he known this he would have discontinued it immediately. Unable to trace the source of her pain, Dr. McCann referred her to an orthopedist, Dr. Cobb, and a neurologist, Dr. Snatic, both of whom practice in Lafayette.
Ms. Adams began seeing Dr. Cobb, the orthopedist, in January 2000, reporting neck pain, daily headaches, nausea, and a kind of burning, sticking sensation in her neck. She described the pain in her neck as a "9," but on examination she had a full range of motion. He diagnosed post traumatic cervical strain with migraines, but admitted it was unusual for a strain to persist over six months. He testified that in February and May 2000, she came to him asking for Lortab, another form of hydrocodone. He complied, but advised her that she would have to switch to over-the-counter pain medicines. Pharmacy records indicate that he gave her large amounts of hydrocodone from February through June 2000, and again from November 2001 through January 2002. He further testified he was unaware that she was receiving narcotics from Dr. McCann at these times.
Dr. Cobb suggested a second MRI and a discogram, which were performed in October 2001 and January 2002, respectively. Both were normal. He discharged her in January 2002, saying he had no more treatment to offer her.
Ms. Adams began seeing Dr. Snatic, the neurologist, in February 2001. Like Dr. Cobb, he never found any neurological deficits in her neck or back. He suggested an EEG and a blink reflex test, both of which were normal. She told Dr. Snatic she was taking about seven hydrocodone pills a week. He considered this a large dosage which created a chance for chronic headaches (he referred to it as "medication overuse and rebound"). He instructed her to quit taking so much hydrocodone, and prescribed physical therapy. He gave her various anti-depressants and tranquilizers, and periodic injections of Cortisone. Based on her history, he accepted that the accident was causing her migraines.
Ms. Adams testified that at the time of trial in April 2002, she was still getting two or three migraines a month, each lasting two or three days. She also complained of continued pain in her neck. None of this predated the accident. She also denied that she ever went to any doctor just *1196 because she wanted more drugs. She admitted taking hydrocodone from Drs. McCann and Cobb simultaneously, filling prescriptions for about 400 pills between February and April 2000. She explained that she saved them for when she needed them, and only took about 15 a week. She added that when on Dr. Snatic's advice she quit taking hydrocodone for about two weeks, it gave her no relief from headaches.

Procedural history
Ms. Adams filed suit against the driver of the rig, Chenault, his employer, Southern Made Trucking, and their insurer, Employers Mutual Casualty Co.[2] Her 12-year-old daughter, Jessica, a passenger in the back seat of the Continental, joined the petition as a plaintiff. Prior to trial, Employers Mutual conceded liability. The matter went to a bench trial on quantum only in April 2002. The only live witnesses were Ms. Adams and her husband, David Adams. Drs. McCann, Cobb and Snatic testified by deposition, and various medical, hospital and pharmacy reports were offered in evidence. Her medical bills, which included treatment, therapy, drugs and diagnostic tests, totaled $32,291.75.[3]
The District Court issued no reasons for judgment. By judgment of May 2002, it awarded Jessica special damages of $356.00 and general damages of $1,500.00; these awards have not been appealed. The court then cited Smith v. Lee, 00-1079 (La.App. 5 Cir. 4/11/01), 783 So.2d 642, writ denied, 01-1731 (La.9/28/01), 798 So.2d 116, and awarded Ms. Adams general damages of $100,000. He further awarded special damages of $32,291.75, and future medical expenses of $10,000.
Employers Mutual has appealed, contesting by two assignments of error the award of general damages and future medical expenses.

Discussion: General Damages
By its first assignment, Employers Mutual contests the general damages of $100,000 as excessive. It first cites the discrepancy between the emergency room report and her later complaints to the various doctors; as a result, there is insufficient proof of causation. It next argues that despite numerous medical exams and specialized tests, no one has ever found any objective evidence to support her claim of chronic migraines. It notes the huge amount of hydrocodone she obtained from Drs. McCann and Cobb simultaneously, and contends that her course of treatment was in fact "drug seeking activity." It also submits that according to Dr. McCann, the hysterectomy and hormone replacement therapy could be contributing to her headaches. Employers Mutual concludes that if Ms. Adams has suffered headaches as a result of the accident, she made them worse by her own conduct. It suggests a maximum affirmable award of $10,000.
Ms. Adams contends that because she had no headaches or neck pain prior to the accident, she is entitled to the presumption of causation stated in Housley v. Cerise, 579 So.2d 973 (La.1991). Noting that every physician has accepted as true her complaints of debilitating migraines, she submits that the judgment is not an abuse of the District Court's wide discretion. Hae Woo Youn v. Maritime Overseas Corp., 92-3017 (La.9/3/93), 623 So.2d 1257, cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
*1197 Because Employers Mutual conceded liability, the only issue is quantum. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. Keeth v. State, 24,720 (La.App. 2 Cir. 5/5/03), 618 So.2d 1154, writ dism., 93-1569 (La.6/18/93), 619 So.2d 563. Much discretion is accorded to the trier of fact in fixing general damage awards. La. C.C. art. 2324.1. This discretion is so vast that an appellate court should rarely disturb an award of general damages. Hae Woo Youn v. Maritime Overseas Corp., supra. Nevertheless, if an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, the appellate court should increase or decrease the award. Duncan v. Kansas City Southern Ry. Co., 00-0066 (La.10/30/00), 773 So.2d 670.
An injured party has a duty to take reasonable steps to mitigate his damages. Aisole v. Dean, 574 So.2d 1248 (La. 1991), and citations therein. The use of prescribed medications may constitute a failure to mitigate under circumstances of bad faith, fraud, or failure to take the medicine as directed. Taylor v. Tulane Med. Center, 98-1968 (La.App. 4 Cir. 11/24/99), 751 So.2d 949, rehearing granted.
Ms. Adams was involved in a truck-car collision which, though significant, did not seriously injure any other occupants of the car. She did not complain of headaches at the scene or the next day at Avoyelles General, but a week later she began to report that debilitating headaches had occurred immediately and persisted. Apart from neck and back strain, no doctor could find any organic problem or physical injury. All doctors said that neck strain could cause migraine headaches, but none could explain the persistence of a strain for over six months after the accident. An array of sophisticated diagnostic tests yielded absolutely nothing abnormal.
Although she denied it, this record shows a pattern of abuse of prescription narcotics. Dr. McCann, her treating physician, testified that a dosage of 1½ hydrocodone tablets a day would not create an addiction. The pharmacy records, however, show that she received dosages greatly in excess of that amount, particularly in the Spring of 2000 and Autumn of 2001. This was despite the direct advice of Dr. Snatic to get off this drug, and his expert opinion that continuing it in such quantities would make her headaches worse. Notably, she misrepresented to Dr. Snatic how much hydrocodone she was taking, and withheld from Drs. Cobb and McCann the fact that she was getting this drug from both of them simultaneously. Both doctors said they would have halted the medication immediately had they known of these facts.
Even with great deference to the District Court's findings, this evidence compels the conclusion that Ms. Adams has failed to mitigate her damage, and in fact aggravated it, by disregarding one doctor's orders to curb her narcotics intake and by withholding information from the others to get even more hydrocodone. As there is no other explanation for her prolonged condition, we must accept Dr. Snatic's opinion that using this amount of hydrocodone has contributed to her chronic headaches. For these reasons, the award of general damages is clearly above the amount that a reasonable trier of fact could assess for the effects of this accident upon Ms. Adams.
*1198 The jurisprudence is replete with cases of plaintiffs who sustained, as a result of trauma, serious and debilitating headaches, often continuing until trial. See, e.g., Fontenot v. Omni Ins. Group, 99-504 (La.App. 3 Cir. 10/13/99), 745 So.2d 716; Veazey v. State Farm Mutual Auto Ins. Co., 587 So.2d 5 (La.App. 3 Cir.1991); Smith v. Lee, supra;[4]Whited v. Home Depot USA Inc., 27,938 (La.App. 2 Cir. 8/3/96), 712 So.2d 97, writ denied, 96-2340 (La.11/22/96), 683 So.2d 282; Fitch v. Vintage Petr. Inc., 94-346 (La.App. 3 Cir. 11/2/94), 652 So.2d 998; Lowery v. Savana, 33,384 (La.App. 2 Cir. 5/10/00), 759 So.2d 1020; Sutton v. Lambert, 94-2301 (La. App. 1 Cir. 6/23/95), 657 So.2d 697, writ denied, 95-1859 (La.11/3/95), 661 So.2d 1384. For injuries similar to Ms. Adams's, these cases establish a range of damages from minimal to $45,000. On this record, we find the maximum affirmable amount of general damages for Ms. Adams's injuries is $45,000. The judgment will be amended accordingly.

Future medical expenses
By its second assignment, Employers Mutual contests the future medical award of $10,000 as excessive. It asserts that Dr. Cobb has released Ms. Adams with no plan for future treatment; Dr. Snatic testified that four more office visits at $105.00 each should be sufficient to manage her problems; and Dr. McCann projected roughly one more year of monthly office visits at $100.00 each. It contends that the highest affirmable amount would be $1,600.00.
Ms. Adams cites her own testimony that she intended to see Dr. McCann every two weeks and Dr. Snatic at least one more time. She contends that she will need "continuous treatment by Dr. McCann, injections into the head, brain MRIs and * * * medication [as] she has been taking in the past and will likely have to take in the future." She concludes that because her prior medical expenses exceeded $32,000, the award of $10,000 is not an abuse of discretion.
Future medical expenses must be established with some degree of certainty, and cannot be predicated on mere speculation. Quinn v. Wal-Mart Stores Inc., 34,280 (La.App. 2 Cir. 12/6/00), 774 So.2d 1093, writ denied, 01-0026 (La.3/9/01), 786 So.2d 735. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and projecting their probable costs. Duncan v. Kansas City Southern, supra. The plaintiff must show that, more probably than not, these expenses will be incurred. Morrison v. Kappa Alpha PSI Fraternity, 31,805 (La. App. 2 Cir. 5/7/99), 738 So.2d 1105, writs denied, 99-1668, 1607, 1622 (La.9/24/99), 747 So.2d 1120, 749 So.2d 634, 635.
Dr. McCann stated that in the last few months before his deposition in October 2001, Ms. Adams had shown slight improvement. If this trend continued, he projected only one more year of his treatment, including injections of non-narcotic drugs. Earlier, he stated that she would have "another few years of discomfort for sure." According to his records, office visits have been roughly every other week at $75.00 per visit, with injections totaling $50.00 every other visit. If her progress falters, he mentioned pain management as an alternative; however, he did not estimate this cost, and he stated that most patients do not benefit from it. Dr. Snatic would project only four more office visits at $105.00 per visit.
*1199 We are not persuaded that Ms. Adams's prior medical expenses of over $32,000 are relevant to projecting her future medicals. Of the medical expenses incurred so far, the bulk has gone for expensive diagnostic tests that revealed absolutely no abnormalities; for the purchase of prescription narcotics; and for doctor visits made primarily to obtain the prescriptions. The record supports a finding that Ms. Adams should pursue non-narcotic pain management with Dr. McCann. However, he estimated his costs at about $2,500 per year, and projected treatment for "another few years." The instant record will not support the District Court's award of $10,000 in future medicals. Under the circumstances, the highest amount within the District Court's discretion is $5,000. The judgment will be amended accordingly.

Conclusion
For the reasons expressed, the judgment is amended to reflect a general damage award of $45,000 and a future medical award of $5,000. As amended, the judgment is affirmed. Costs of appeal are assessed to the appellee, Ms. Adams.
AMENDED AND AFFIRMED.
NOTES
[1] Between June 2001 and January 2002, these prescriptions were actually written by Dr. McCann's partners, Dr. Blanda and Dr. Darron McCann, his son. She also received a prescription for hydrocodone in June 2001 from another general practitioner in Marksville, a Dr. Plauché.
[2] She also named her host driver, Jessie LaPrairie, and his insurer as defendants, but they were dismissed prior to trial.
[3] Dr. McCann's bill was $7,009.00; pharmacy bills were $5,648.70; physical therapy was $3,511.00. The remainder was for Drs. Cobb and Snatic and for diagnostic tests.
[4] Reference is made to the plaintiff Mrs. Guidroz, whose award was raised to $15,000, and not to Mrs. Smith, whose award of $100,000 (cited by the District Court) is supported by the aggravation of a pre-existing injury and other circumstances not present in the instant case.