862 So.2d 457 (2003)
Lesa SEPULVADO, et ux., Plaintiffs-Appellees,
v.
Spence A. TURNER, et al., Defendants-Appellants.
No. 37,912-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*459 Ungarino & Eckert by Matthew J. Ungarino, Metairie, for Appellants.
Byron D. Kitchens, West Monroe & David O'Brian Harkins, Jr., Monroe, for Appellees.
Before WILLIAMS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a jury verdict of damages in favor of Plaintiffs, Lesa Sepulvado and Jessie Sepulvado, individually and on behalf of their minor children, Brittney Sepulvado, Ashley Sepulvado and Cary Sepulvado (collectively "Plaintiffs"), and against Defendants, Spence A. Turner, Time Warner Entertainment Co., L.P. and Travelers Insurance Company (collectively "Defendants"). Defendants now appeal the judgment of the trial court. For the reasons stated herein, we affirm.

FACTS
On January 20, 2001, Mr. and Mrs. Sepulvado and their three children were involved in a car accident with Mr. Spence A. Turner, who, at the time of the accident, was driving his work vehicle in the course and scope of employment for Time Warner Entertainment. Mr. Turner drove his vehicle into the back of Plaintiffs' car at the intersection of Warren Drive and Wellerman Road in West Monroe, Louisiana. Plaintiffs' car was totaled.
Experiencing discomfort from the accident, Mrs. Sepulvado saw Dr. Dan Wiegand, who recommended treatment and a plan of care for her injuries. In particular, Mrs. Sepulvado was having extreme pain in her lower back. Dr. Wiegand subsequently referred Mrs. Sepulvado to Dr. John Ledbetter because Mrs. Sepulvado's lower back was not responding to his treatments. Thereafter, Dr. Ledbetter prescribed a plan of treatment for Mrs. Sepulvado. After treating Mrs. Sepulvado from May to December 2001, Dr. Ledbetter opined that Mrs. Sepulvado would need ongoing treatment periodically, including several sacral iliac joint injections, and a weight loss and exercise plan was prescribed. Despite these treatments, however, Mrs. Sepulvado continued to have pain in her lower back, especially after prolonged sitting, and walking also exacerbated the pain. Mrs. Sepulvado was diagnosed with sacral iliac joint dysfunction, a permanent injury.
Plaintiffs filed a lawsuit against Defendants and Defendants stipulated to their liability, asking that only the issue of damages be presented to the jury. A trial was held on the issue of damages on January 21, 22 and 23, 2003. Mrs. Sepulvado testified as to her injuries and pain. Each family member also testified at trial as to the limitations affecting Mrs. Sepulvado and how those limitations have affected the entire family. Mr. Sepulvado testified as to how the change in Mrs. Sepulvado had resulted in the loss of intimacy between him and his wife. Mr. Sepulvado and the children also testified as to the losses in *460 the lifestyle of the family as a result of the accident. Several of Mrs. Sepulvado's coworkers testified as to the limitations Mrs. Sepulvado now had at work due to the injuries from her accident. The Sepulvados' pastor testified as to specific examples of Mrs. Sepulvado's pain that he had observed after the accident.
Dr. Ledbetter testified that Mrs. Sepulvado will have future fluctuations in pain levels depending on her level of activity. In addition, Dr. Ledbetter testified that Mrs. Sepulvado's treatments will have to continue for a minimum of 10 years, and for possibly as long as 15 years, resulting in a minimum of $32,000 in future medical expenses.
On the other hand, Dr. Douglas Brown testified for the Defendants that Mrs. Sepulvado had arthritis in her joints and that, in his opinion, this was a pre-existing condition. Dr. Brown also testified that her excessive weight alone could have caused this arthritic condition to worsen and that this was the cause of her pain. He indicated that he tested Mrs. Sepulvado and found that she had no spasm, good muscle strength, a negative straight leg raising test, no disc or nerve involvement and only mild tenderness. Dr. Brown further testified that Mrs. Sepulvado would not be limited in her activities and he recommended that she lose 50 pounds and become more active.
The entire Sepulvado family testified as to the efforts that Mrs. Sepulvado had taken to lose weight. Mrs. Sepulvado testified that she exercised with free weights, went through the "Body for Life" program, counted calories, walked, drank diet shakes and participated in a low carbohydrate diet. She testified that her dress size went from a size 20 to a size 16. Dr. Ledbetter testified that he knew that Mrs. Sepulvado was dieting and exercising as he had directed.
Mrs. Sepulvado also testified that her daughter Ashley began experiencing headaches shortly after the accident and complained of tightness in her jaw and neck. Ashley testified that she began experiencing pain in her jaw and headaches shortly after the accident and that her jaw would make a popping sound. She told Dr. Wiegand about her pain a couple of weeks after the accident. Dr. Wiegand testified at trial that he remembered that Ashley told him of these symptoms. Dr. Glenn Hummel, an orthodontist, later testified that he diagnosed Ashley's symptoms as TMJ syndrome. Based on Ashley's history and the lack of any previous problems with her jaw, Dr. Hummel testified that the car accident caused Ashley's TMJ.
At trial, both Dr. Ledbetter and Dr. Wiegand also testified that Mrs. Sepulvado's injuries were a result of the accident. Defendants were found to be liable to Plaintiffs for damages in the total amount of $427,395.13 plus legal interest from the date of judicial demand and all costs of the proceedings. Further, Defendants were ordered to pay Plaintiffs' expert witness fees in the amount of $1,425 for Dr. John Ledbetter and $900 for Dr. Dan Wiegand. Damages were broken down in the following amounts: $344,610.94 for Lesa Sepulvado; $29,454 for Jesse Sepulvado; $15,883 for Mr. and Mrs. Sepulvado, individually and on behalf of their minor child, Brittney Sepulvado; $23,358.19 for Mr. and Mrs. Sepulvado, individually and on behalf of their minor child, Ashley Sepulvado; and $14,089 for Mr. and Mrs. Sepulvado, individually and on behalf of their minor child, Cary Sepulvado.
The damages awarded to Lesa Sepulvado included $250,000 for past and future pain and suffering, $35,000 for future medical expenses and $35,000 for loss of consortium. Included in the damages awarded to Jessie Sepulvado were $20,000 for *461 loss of consortium. The damages awarded to each child included $7,500 for loss of consortium. Ashley Sepulvado received an award of $7,500 for future pain and suffering based on her diagnosis of TMJ syndrome. Following the jury verdict, Defendants filed a motion for new trial or, alternatively, a motion for judgment notwithstanding the verdict. The trial judge denied both motions, finding that the damages were appropriate because the accident was a life-changing event for the whole family. Further, the trial judge found that Mrs. Sepulvado's injuries were substantial and would affect her the rest of her life. Defendants now appeal, raising the following assignments of error (verbatim):
1. The jury's award for general damages was excessive and outside the permissible range of awards for general damages for Lesa Sepulvado;
2. The jury's verdict is patently wrong, as the awards for loss of consortium were excessive and outside the range of reasonable awards for these damages;
3. The jury's award of $35,000 for future medical expenses for Lesa Sepulvado was patently incorrect, as the testimony at trial indicated future medical expenses were no more than $32,000.
4. The jury's award for Lesa Sepulvado was manifestly erroneous in that she failed to mitigate her damages and the award should have been reduced; and
5. The jury's award for Ashley Sepulvado for TMJ syndrome was patently incorrect as she did not complain to any medical provider of symptoms until over one year after the incident.

DISCUSSION

Damages for Future Pain and Suffering and Loss of Consortium
Defendants first argue that the jury abused its discretion in awarding Mrs. Sepulvado $250,000 in damages for past and future pain and suffering. In addition, Defendants assert in their second assignment of error that the jury abused its discretion in awarding an excessive amount of damages to each Plaintiff for loss of consortium. We are not persuaded by Defendants' first two arguments.
La. C.C. art. 2324.1 provides:
In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury.
The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Morris v. Flores, 36,932 (La.App.2d Cir.3/7/03), 840 So.2d 1257; Hays v. State, 37,229 (La.App.2d Cir.9/24/03), 856 So.2d 64. Only when the record clearly shows that the trier of fact abused its discretion in awarding damages in either direction beyond that which a reasonable trier of fact would assess for the effects of a particular injury on a particular party under the particular circumstances should an appellate court either increase or decrease the award. Youn, supra. An appellate court's function is not to determine whether a different damage award may have been more appropriate, but whether the trial court's award is based on justifiable inferences from the evidence and is reasonably supported by the record. Summarell v. Ross, 27,160 (La.App.2d Cir.8/23/95), 660 So.2d 112.
*462 In the case sub judice, the evidence presented at trial established that Mrs. Sepulvado suffered a great deal of pain after the accident. Her injuries were substantial and they will affect her the rest of her life. In reviewing the record, we find that Mrs. Sepulvado's injuries have changed her life forever. She has to have help to do most tasks at work, even though before the accident she was one of the hardest working employees. She cannot move around like she could before and her range of motion is very limited.
The accident has also changed the family life of the Sepulvados. It was established at trial that, before the accident, the Sepulvados were a unique family, one that spent a great deal of time together, with Mrs. Sepulvado serving as the anchor of the family. The record demonstrated that, since the accident, the family cannot go camping or on nature walks anymore because of Mrs. Sepulvado's mobility limitations. Mrs. Sepulvado also can no longer attend any of her children's field trips or extracurricular activities because of her injuries sustained from the accident. In addition, there has been a loss of intimacy between Mr. and Mrs. Sepulvado.
The record before us contains the testimony of not only the Sepulvado family and Mrs. Sepulvado's co-workers, but also the doctors who treated her. Both Drs. Wiegand and Ledbetter testified as to Mrs. Sepulvado's injuries and the resulting pain. The jury heard the entire evidence presented, including the testimony of Defendants' expert witness Dr. Brown, and found that Plaintiffs' witnesses were more credible. The particular injuries to Mrs. Sepulvado in this case caused not only her own physical problems, but also caused her entire family to suffer. We find that the jury, acting as a reasonable trier of fact and using the particular circumstances of this case, did not abuse its discretion in awarding $250,000 in general damages to Mrs. Sepulvado for past and future pain and suffering. Moreover, the jury's award to each Plaintiff for loss of consortium damages was not excessive. The damages awarded are reasonably supported by the record; and, thus, Defendants' first two assignments of error are without merit.

Future Medical Expenses
Defendants contend that Dr. Ledbetter testified that $32,000 was his estimate of future medical expenses for Mrs. Sepulvado; and, therefore, the jury clearly erred in awarding $35,000 to Mrs. Sepulvado and this court should strike or amend this award. Further, Defendants insist that no doctor would inject a patient for ten years and that Dr. Ledbetter's testimony in that regard was not credible. We do not agree with Defendants' contentions.
Future medical expenses by their nature are incapable of precise measurement. La. C.C. art. 1999 provides:
When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.
A plaintiff has a right to recover for the cost of future medical treatments even when the extent and cost of those treatments cannot be established with certainty. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). As previously stated, the trier of fact has great discretion in awarding damages and this award should not be disturbed in the absence of showing an abuse of that discretion.
Future medical expenses, however, must be established with some degree of certainty. Adams v. Chenault, 36,729 (La.App.2d Cir.1/29/03), 836 So.2d 1193, writs denied, 03-0616, 03-0749 (La.5/9/03), 843 So.2d 398 and 401. Awards for future medical expenses that may or may not be *463 incurred require medical testimony that they are indicated and their probable costs. Kessler v. Southmark Corp., 25,941 (La.App.2d Cir.9/21/94), 643 So.2d 345. The plaintiff must show that, more probable than not, these expenses will be incurred. Morris v. United Services Automobile Ass'n., 32,528 (La.App.2d Cir.2/18/00), 756 So.2d 549.
In the instant case, Dr. Ledbetter testified for Plaintiffs as to his estimation of Mrs. Sepulvado's future medical expenses necessary to relieve her pain. The jury found Dr. Ledbetter's testimony to be credible. Defendants had an opportunity to attack his credibility at trial and, apparently, failed to persuade the jury. Further, although the record does establish that Dr. Ledbetter's estimation of treatments for 10 years would total $32,000, the record also establishes that he testified that Mrs. Sepulvado's treatments could continue for as long as 15 years. This established that future medical expenses were in the range of $32,000 to $48,000 (at $3,200 per year). In light of this evidence, we find that Mrs. Sepulvado established the amount of future medical expenses with the appropriate degree of certainty and that these expenses more probably than not will be incurred in order to relieve her pain. The award of $35,000 in future medical expenses was within the range of possible future medical expenses. Accordingly, we find that Defendants' third assignment of error is without merit.

Mitigation of Damages
Defendants further assert that Mrs. Sepulvado failed to mitigate her damages because she failed to lose 50 pounds as Dr. Brown had recommended. Further, Defendants claim that Mrs. Sepulvado's weight puts stress on her spine, causing her medical problems; and, thus, the jury's award of damages should be reduced. We decline to follow Defendants' assertions.
An injured party has a duty to mitigate his damages. Aisole v. Dean, 574 So.2d 1248 (La.1991). It is a well established principle of law, however, that a tortfeasor takes his victim as he finds him; and, although the damages caused are greater because of the victim's prior condition, which is aggravated by the tort, the tortfeasor is, nevertheless, responsible for the consequences of his tort. Thames v. Zerangue, 411 So.2d 17 (La.1982). The victim does, indeed, have an affirmative responsibility to make every reasonable effort to mitigate damages, but the care and diligence required of him is the same as that which would be used by a man of ordinary prudence under like circumstances. Aultman v. Rinicker, 416 So.2d 641 (La.App.2d Cir.1982). The victim need not make extraordinary efforts or do what is unreasonable or impractical in his efforts to minimize the damages, but his efforts to minimize them must be reasonable and in accordance with the rules of common sense. Id.
In the case sub judice, Mrs. Sepulvado made every reasonable effort to reduce her weight, especially in light of the fact that her injuries were causing her serious pain. Mrs. Sepulvado followed her diet and participated in an exercise program to reduce her weight as she was instructed by Dr. Ledbetter. Her efforts to reduce her weight were reasonable and diligent and considered extraordinary by Dr. Ledbetter, particularly considering her limitations due to her pain. In fact, Mrs. Sepulvado was successful in losing weight and in reducing the stress on her back. We find that Mrs. Sepulvado properly mitigated her damages; and, thus, Defendants' fourth assignment of error has no merit.

*464 Damages Awarded to Ashley Sepulvado for TMJ Syndrome

Finally, Defendants argue that Ashley Sepulvado should not have received an award for her TMJ syndrome. Defendants contend that it was at least a year after the accident before Ashley made any complaints about her condition; and, consequently, this court should strike the award of $7,500 for Ashley's future pain. We disagree.
Contrary to Defendants' assertions, the testimony at trial established that Ashley began experiencing pain in her jaw a few days after the accident and she relayed those complaints to Dr. Wiegand shortly thereafter. Even though the TMJ syndrome was not diagnosed until later, the symptoms were present shortly after the accident and Ashley has suffered from them since that time. We find that there is ample evidence in the record to conclude that the TMJ syndrome was caused by the accident, that Ashley complained of the symptoms shortly after the accident and that her complaints were well documented. Defendants' final assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court following the jury verdict of damages in favor of Plaintiffs, Lesa Sepulvado and Jessie Sepulvado, individually and on behalf of their minor children, Brittney Sepulvado, Ashley Sepulvado and Cary Sepulvado, is affirmed. Costs of this appeal are assessed to Defendants, Spence A. Turner, Time Warner Entertainment Co., L.P. and Travelers Insurance Company.
AFFIRMED.